SOUTHWICK, P.J., for the court.
¶ 1. Michael L. Boaz was granted a divorce based on his wife’s adultery. Permanent physical custody of their child was awarded to Shelley Lynn Boaz. Michael Boaz appeals arguing that the chancellor’s findings of fact were not supported by substantial evidence nor in the best interest of the child. We disagree and affirm.
STATEMENT OF FACTS
¶2. Michael L. Boaz and Shelley L. Boaz were married in 1995 in Louisville, Kentucky. One daughter, Taylor Marie Boaz, was born in October 1996. The couple separated in January 1997. In addition to Taylor, Shelley has three other children fathered by three different men. In April 1998, Shelley moved to Long Beach, Mississippi, to live with Chris Hall, an individual she met one month prior through the Internet. Shelley took Taylor with her.
¶ 3. Michael filed for divorce in January 1999. After a three day trial in April 1999, Michael was granted a divorce on the ground of adultery. Temporary custody would alternate between the parents, while permanent custody would be determined later. In August 1999, Shelley and Chris Hall, now married, moved their family to Georgia.
¶4. The final hearing on custody was held in March 2000. The mother was awarded permanent custody, with reason *628 able visitation to the father. This is the father’s appeal of that determination.
DISCUSSION
¶ 5. The only issue on appeal is the placement of the child. Mr. Boaz argues that the chancellor’s findings of fact were not supported by substantial evidence and this custody was not in the child’s best interest. Second, the father argues that the chancellor applied the wrong legal standard.
¶ 6. What in essence is being argued is that the chancellor did not properly evaluate the factors designated by the Supreme Court for making a custody determination. A total of twelve factors have been identified as necessary to consider. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Findings on each must be set out in the chancellor’s decision. Powell v. Ayars, 792 So.2d 240, 244 (Miss.2001). The chancellor made findings as to all twelve Albright factors. We examine those that Mr. Boaz challenges, all of which were found to be in favor of the child’s mother.

1. Parenting Skills

¶ 7. The error as to parenting skills is said to arise from strong a reliance on the testimony of Chris Hall, the mother’s boyfriend at the time of the hearing and later her husband. Hall’s credibility is attacked because of a variety of factors, including his likely desire to be of assistance to his wife in her custody battle with her former husband. Also disputed is the testimony of Dolly Bonura, Shelley Boaz’s grandmother. There are parts of the grandmother’s testimony in which some confusion may have been revealed. For example, Mrs. Bonura referred to Shelley Boaz as “Gail”, which is the name of Shelley’s mother. She also may not have been completely candid when she denied having been to Kentucky, but she had, and not having assisted Shelley Boaz with paying bills. Mrs. Bonura had in fact given Shelley $500 for an attorney. These matters were known to the chancellor. How to measure credibility is almost exclusively a matter for the trier of fact.
¶ 8. The chancellor’s findings on parenting skills made no reference to either the testimony of Chris Hall or Dolly Bonura. The chancellor did reference two home studies, one for the father conducted by the Kentucky Cabinet for Families and Children and one for the mother conducted by the Georgia Department of Human Resources. Mr. Boaz argues that the chancellor relied too heavily on the home studies. However, the chancellor noted that the Kentucky home study recommended that the father retain custody.
¶ 9. What tipped the scales in favor of the mother appears to be none of these matters, but the nature of the evidence as to the father’s parenting practices. The chancellor stated that she believed the majority of the parenting when the child was in the father’s home was provided not by him, but by his mother. The chancellor stated that while both parents were capable of providing care for the child, parenting skills favored the mother because “there was an abundance of evidence demonstrating Shelley to be an effective and loving parent” and because “Michael offered little evidence of his parenting skills.” We find no error.

2. Age and Health of the Child

¶ 10. The chancellor found that although Taylor was generally in good health, she did suffer from “restrictive air disease,” a condition similar to asthma. The chancellor noted that Taylor’s age did not favor either party. However, the chancellor found this factor to weigh in the mother’s favor because both the father and *629 his mother smoked. The chancellor had earlier ordered that the child not be in a home where anyone smoked. There was testimony from Mr. Boaz’s father that his son continued to smoke, a not-surprising fact considering that court orders are probably no more effective than other methods for stopping a smoking habit. However, Mr. Boaz testified that he had not smoked for five months before the final hearing, suggesting that he was less candid than had been his father.
¶ 11. In retaliation perhaps, Mr. Boaz testified to having seen packs of cigarettes in the back of Chris Hall’s car. Hall testified that this was true, but that he only collected the points off the packs so that he could purchase certain products offered by that particular cigarette brand. Without any more evidence than that of smoking in the mother’s home, the chancellor could find that this particular child’s health needs were better served with the mother.
¶ 12. Mr. Boaz notes that both he and his mother testified that they were trying to quit smoking. The issue of smoking appeared to have been quite significant to the chancellor. Still, we are satisfied that the chancellor was not creating a new standard for custody decisions in which smoking is treated as an independent reason not to award custody. Instead, this child had a specific respiratory problem greatly affected by smoking.
¶ 13. The chancellor also determined that the mother was more insistent about getting the child to her necessary appointments with an optometrist and a dentist. On the other hand, Mr. Boaz argues that the evidence reveals that he and not the child’s mother was the one who made sure that Taylor received all of her vaccinations. There were other disputes about who was more faithful in tending to the child’s various health needs. Without reviewing all of those in this opinion, we find no error in the chancellor’s conclusion that this factor favored the mother.

S. Unlabeled Factor

¶ 14. Without identifying exactly what Albright factor this might be, Mr. Boaz argues the chancellor did not place enough emphasis on what the chancellor termed Shelley Boaz’s “pattern of poor life choices and questionable conduct .... ” The chancellor noted that she had four children fathered by four different men, not all of whom she had married. The chancellor noted that one of the men with whom Shelley Boaz committed adultery had broken her wrist and injured her hip. The man had also attempted to commit suicide by taking large amounts of prescription medication and by placing a gun in his mouth. Shelley’s children were present, but did not witness the suicide attempt. Even so, two months after the suicide attempt, Shelley Boaz allowed the man to move back in with her and her children.
¶ 15. This is of course a quite serious consideration, at least as worrisome as smoking. However, the chancellor found that the mother had made a great deal of progress in placing her own emotional affairs in order since those events. She had attended counseling sessions, married Chris Hall, and become employed. Not to be denied, though, is that this new-found stability might be fleeting.
¶ 16. There are a number of Albright factors in which this consideration could fit. Regardless of the rubric under which it is considered, the matter was addressed by the chancellor. She found that Mrs. Boaz’s improvement as to these past problems was a promising development. Should such progress indeed prove fleeting, the remedy of modification is available.

*630
4.. Moral Fitness

¶ 17. Mr. Boaz argues that this factor should have been determinative in the chancellor’s custody decision. He was awarded a divorce based on his wife’s admitted adulterous relationships. Even so, the custody decision focuses on the best interest of the child. That is a separate matter from the grounds for divorce, which focuses on fault in maintaining the marriage. “[I]t may be in the best interest of a child to remain with its mother even though she may have been guilty of adultery.” Hollon v. Hollon, 784 So.2d 943, 949 (Miss.2001). The moral fitness factor cannot alone be determinative of the outcome. The chancellor did find that this factor “obviously” favored the father. The chancellor stated that while the mother now led “a more mature and healthy lifestyle,” the past behavior could not be ignored.
¶ 18. Of all the twelve Albright factors, some of which we have not discussed, the chancellor found that four weighed in favor of the mother and three favored the father. Five factors weighed in favor of neither party. The chancellor held that despite the evidence concerning the mother’s past, that Taylor’s best interest would be served by awarding her permanent physical custody-
¶ 19. We agree with the chancellor’s statement that this was a “troubling case.” Both parents and their homes presented some risks. However, we cannot say the chancellor’s decision was clearly erroneous or unsupported by substantial evidence.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.