856 So.2d 370 (2003)
Kevin DIVERS, Appellant,
v.
Jennifer DIVERS, Appellee.
No. 2001-CA-01358-COA.
Court of Appeals of Mississippi.
March 18, 2003.
Rehearing Denied August 19, 2003.
Certiorari Denied November 6, 2003.
*372 Carrie A. Jourdan, Columbus, attorney for appellant.
Thomas G. Wallace, Columbus, attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES and MYERS, JJ.
MYERS, J., for the court.
¶ 1. Kevin Divers filed for divorce from his wife Jennifer Divers in the Lowndes County Chancery Court. The divorce was granted with Jennifer being awarded custody of Zachary Divers, their son, and child support. Kevin appeals asserting as his only issue:
1. WHETHER CERTAIN FINDINGS OF FACTS BY THE CHANCERY COURT WERE CLEARLY ERRONEOUS AND WHETHER ITS APPLICATION OF THE ALBRIGHT FACTORS TO THE FACTS OF THE CASE WERE ALSO CLEARLY ERRONEOUS.

STATEMENT OF FACTS
¶ 2. Early in 2000, Kevin filed for divorce from Jennifer on the grounds of insanity, habitual and cruel and inhuman treatment, or alternatively, irreconcilable differences. The parties consented to an irreconcilable differences divorce with submission to the chancellor of the issues of custody and support. No testimony or evidence was presented at the trial level as to Kevin being morally, physically, or mentally unfit as a parent. The crux of the appeal turns primarily upon Jennifer being awarded custody despite her mental disorders.
¶ 3. Jennifer suffers from borderline personality disorder (BPS), which requires doses of anti-depression medication and mood stabilizers. Originally, Jennifer had been diagnosed with bipolar disorder, but that was later retracted and changed to the BPS. Jennifer attempted suicide on September 16, 1999, by making small cuts and scratches on her wrists with a razor blade. This attempt resulted in her hospitalization for several days in a hospital mental health care ward. In October 1999, Jennifer was taken to an emergency room to have her stomach pumped after intentionally overdosing on prescription medication. Jennifer obtained counseling prior to and after the suicide attempts. Kevin also attended some joint sessions in an effort to help alleviate Jennifer's mental problems. Testimony was presented that no real progress had been made in resolving Jennifer's mental problems although some stability had been restored. Testimony presented at trial also indicated that Jennifer's mental problems could worsen under the stress associated with taking care of Zachary.
¶ 4. Kevin and Jennifer met while he was a cadet at the Air Force Academy and she was an airman in Colorado Springs, Colorado. The two began dating secretly in violation of the Air Force's anti-fraternization rule. The liaison culminated in Jennifer becoming pregnant. Jennifer was given the option, by the Air Force, of leaving the military or stop seeing Kevin. She chose the former.
¶ 5. After Jennifer left the military, she lived with Kevin's parents in El Paso, Texas *373 from November 1997 through August 1998 while Kevin finished his cadet training. Zachary was born on April 24, 1998. Kevin and Jennifer were married after his cadet graduation on May 27, 1998.
¶ 6. Kevin, Jennifer, and Zachary lived with his parents from late May 1998 through early July 1998. Kevin was then required to attend a seven week military education program in which Jennifer and Zachary continued to live with Kevin's parents while Kevin lived away at the school. The three reunited and lived in England from late August 1998 through mid July 1999. In July 1999, Jennifer and Zachary returned to El Paso and lived with Kevin's parents until Kevin's assignment in England ended the next month. From August 25, 1999, until their separation on February 21, 2000, Jennifer and Kevin resided at Columbus Air Force Base.
¶ 7. Zachary, on the other hand, lived with Kevin's parents from October 1999 through December 1999. In late December, Zachary was returned to his parents. It also appears that Zachary returned to his grandparents in January 2000 for a time. As a result of a May 2000 hearing, temporary custody of Zachary was awarded to Kevin's parents who were then residing in Lake Charles, Louisiana. The award was based upon Kevin's schedule and Jennifer's mental condition.
¶ 8. After their separation, Kevin voluntarily gave Jennifer temporary support, paid her apartment rent and deposit from April 2000 through October 2000. At the time of trial, Kevin had received orders transferring him from Columbus Air Force Base, Mississippi to Edwards Air Force Base, California. He was expected to leave for Edwards in February 2001 to serve as a behavioral scientist. His assignment was a non-deployment role. Jennifer, at the time of trial, was a computer technician for the Mississippi School for Math and Science and was contemplating a return to school.

LEGAL ANALYSIS
¶ 9. When this Court reviews the decision of a chancellor relative to child custody we will not disturb that decision unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995); Limbaugh v. Limbaugh, 749 So.2d 1244, 1246(¶9) (Miss Ct.App.1999). It is for the chancellor to determine the credibility and weight of the evidence. Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994).
¶ 10. The polestar consideration in a child custody case is the best interest and welfare of the child. Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994); Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The Supreme Court has identified factors that are to be considered in custody decisions:
(1) age, health, and sex of the child;
(2) a determination of the parent that has had the continuity of care prior to the separation;
(3) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
(4) the employment of the parent and responsibilities of that employment;
(5) physical and mental health and age of the parents;
(6) emotional ties of parent and child;
(7) moral fitness of parents;
(8) the home, school and community record of the child;
(9) the preference of the child at the age sufficient to express a preference by law;
(10) stability of home environment and employment of each parent, and other *374 factors relevant to the parent-child relationship.
Albright, 437 So.2d at 1005.
¶ 11. In the difficult matter of determining child custody in divorce proceedings, the chancellor is necessarily vested with substantial discretion. Shepherd v. Shepherd, 769 So.2d 242, 245 (¶11) (Miss.Ct.App.2000). In Hamilton v. Hamilton, this Court reviewed the record in that case and found that the chancellor should consider each Albright factor specifically in her decision for child custody. Id at (¶ 10). See also Hayes v. Rounds, 658 So.2d 863, 865 (Miss.1995). We found that it is not enough for the chancellor to simply state that she considered these factors. Hamilton, 755 So.2d at 530-31; Hayes, 658 So.2d at 865. If substantial evidence exists to support the chancellor's finding of fact, broad discretion is afforded her determination. McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994).
¶ 12. While there was evidence that could be construed to support an affirmation of the chancellor's findings, we think that there was not substantial evidence to support the chancellor's decision to grant custody of Zachary to Jennifer. Accordingly, we reverse the decision and render it based upon the following analysis of the Albright factors.

Age, health, and sex of the child
¶ 13. Although the chancellor discusses the tendency of courts to historically grant custody of children to the mother based upon the tender age doctrine and the recently weakened aforementioned doctrine, she found that this factor did not favor Kevin or Jennifer. Neither party argues that this was a mistake. We pause only to mention that the tender age doctrine has been incorporated into the Albright factors.

Continuity of care prior to the separation
¶ 14. The chancellor found that this factor favored Jennifer over Kevin. The chancellor considered Jennifer a stay at home mother even though the chancellor acknowledged that the child had spent a significant portion of his life with Kevin's parents, including the entire year preceding the chancellor's order. The chancellor's finding was plainly wrong.
¶ 15. A review of the record indicates that except for eleven months when Jennifer and Zachary were with Kevin in England and a couple of months at the beginning of Kevin's assignment at Columbus Air Force Base, Kevin's parents had either been the primary caregivers of Zachary or greatly assisted Jennifer in caring for Zachary. The chancellor stated that because Kevin was in the military, Jennifer cared for the child more than the Kevin. The factor is the continuity of care prior to the separation, not who cared for the child more over the child's lifespan. If this factor was to favor anyone, it would favor Kevin's parents. Jennifer only cared for the child during her sporadic moments of lucidity. She did not provide continuous care for the child. Accordingly, we hold that while this factor does not favor Kevin over Jennifer, it can neither favor Jennifer over Kevin.

Best parenting skills and willingness and capacity to provide primary child care
¶ 16. The chancellor found and both sides agree that this factor neither favors nor hinders either party. We agree with the chancellor's finding of this factor.

Employment of the parent and responsibilities of that employment
¶ 17. The chancellor found that this factor favors Jennifer over Kevin. We disagree with her decision and her reasoning. The chancellor based her decision on the fact that daycare would be provided *375 where Jennifer works and that no testimony was presented that daycare would be provided at Edwards Air Force Base. A review of Kevin's testimony reveals that he testified that Zachary could be enrolled in the base daycare once his orders had been finalized. The military is well-known for providing appropriate facilities for servicemen. The chancellor also notes that Kevin does not know where he will be assigned in four years. It is important to point out that the chancellor also did not know where Jennifer would be in four years.
¶ 18. Jennifer's job also provided daycare facilities but testimony was presented that she had not held a job for any length of time, even when Kevin's parents had custody of Zachary. There was also testimony that Jennifer might enroll in school, which could result in a loss of daycare. Because of these considerations and the stability of Kevin's employment, this factor favors Kevin over Jennifer.

Physical and mental health and age of the parents
¶ 19. The chancellor found that this factor favors Kevin. We agree but find that the chancellor did not apply enough weight to this factor.

Emotional ties of parent and child
¶ 20. The chancellor found and both sides agree that this factor neither favors nor hinders either party. We agree with the chancellor's decision on this factor.

Moral fitness of parents
¶ 21. The chancellor found and both sides agree that this factor neither favors nor hinders either party. We agree with the chancellor's decision on this factor.

The home, school, and community record of the child
¶ 22. The chancellor found and both sides agree that this factor neither favors nor hinders either party. Zachary was too young to have a record of significance. We agree with the chancellor's decision on this factor.

Preference of the child at the age sufficient to express a preference by law
¶ 23. The chancellor found and both sides agree that this factor neither favors nor hinders either party. Zachary had not yet reached the age that requires a chancellor to consider the child's preference. We agree with the chancellor's decision on this factor.

Stability of home environment
¶ 24. The chancellor found that this factor favors Jennifer over Kevin. We do not see how a woman who had twice tried to kill herself, who admits the stress of raising a child contributes to her mental problems, and whose family has not assisted her can be favored over a man whose parents have practically raised the child and tried to help the woman with her mental suffering through counseling and his removal from certain military work schedules. Kevin has a regular office job which is not a deployment position. The chancellor commented on the fact that Kevin had no housing plans at Edwards Air Force Base. Kevin is a lieutenant assigned to one of the largest bases the air force has in operation. The military will make sure he has housing. There is testimony that he will be assigned housing when his orders are finalized. This factor should have favored Kevin or neither of them.

Other factors relevant to the parent-child relationship
¶ 25. The chancellor commends Kevin for encouraging treatment and taking Zachary to his parents when Jennifer was incapable of taking care of him, but then accuses Kevin of preventing Jennifer from seeing Zachary when she *376 was lucid. We do not find that this is an appropriate factor, since testimony was presented that this was done to assist Jennifer in her coping with her mental disorder and is not really relevant to the parent-child relationship. Also the chancellor criticized Kevin for not exercising his right to visitation every weekend he had visitation. Because of the rules of the military, Kevin was not allowed to travel to see Zachary, and because the temporary custody order required the grandparents to bring Zachary from Lake Charles to Columbus on Jennifer's weekends, the grandparents were not able to bring Zachary to see Kevin during all of his weekends.
¶ 26. The final factor concerns testimony that Jennifer was planning to move to Arizona. Jennifer denied that she was planning to move and the chancellor accepted her testimony. The chancellor was in the best position to judge Jennifer's truthfulness and we accept her finding.

CONCLUSION
¶ 27. The Albright factors are not to be used to in an arbitrary manner. Nor are the factors to be given equal weight in every case. Child custody is a matter of equity which requires more than counting the votes in favor of the mother or father. A single factor can weigh so heavily in favor of one party that equity would require granting custody to that parent. We hold that the chancellor was clearly erroneous in her decision that Jennifer had provided continuity of care for Zachary and that Jennifer's employment and responsibilities demanded favor over Kevin's. Additionally, we hold that the chancellor failed to give appropriate weight to Jennifer's mental condition.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS REVERSED AND RENDERED AS TO THE CHILD CUSTODY. CUSTODY OF THE CHILD IS GRANTED TO THE FATHER. THE CASE IS REMANDED FOR A NEW DETERMINATION OF VISITATION RIGHTS OF THE MOTHER AND CHILD SUPPORT. COSTS ARE ASSESSED TO THE APPELLEE.
SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, AND GRIFFIS, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J. MCMILLIN, C.J., NOT PARTICIPATING.
CHANDLER, J., Dissenting:
¶ 29. I respectfully dissent. My review of the record leads me to conclude that the chancellor carefully considered and weighed all of the Albright factors in ruling that it was in the child's best interest to be with Jennifer.
¶ 30. "This Court does not have the authority to reverse a chancellor's custody determination unless the chancellor is manifestly wrong, clearly erroneous or applies an erroneous legal standard." S.B. v. L.W., 793 So.2d 656, 659(¶15) (Miss.Ct. App.2001). Broad deference should be given to the chancellor because she was able to hear the testimony and judge the demeanor of the witnesses first hand. P.K.C.G. v. M.K.G., 793 So.2d 669, 672 (¶13) (Miss.Ct.App.2001). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this [C]ourt may not intercede simply to substitute our collective opinion for that of the chancellor." Hinders v. Hinders, 828 So.2d 1235, 1244(¶ 28) (Miss. 2002).
¶ 31. The majority finds the chancellor erred in favoring Jennifer on the following factors.

*377 A. Continuity of care.
¶ 32. The majority argues that through much of the child's life he had been in the care of Kevin's parents. Prior to the separation, the child resided with the grandparents for a total of six months. The record indicates that during those six months Jennifer also resided with Kevin's parents. During this interim living arrangement, Kevin resided for only one month with his family. I fail to see how temporarily residing with Kevin's parents somehow diminishes Jennifer's role as the primary caretaker. Also, I do not see the rationalization of how the care of Kevin's parents somehow converts to favoring Kevin.
¶ 33. It is also important to note that Kevin testified that while the family was stationed in Europe and on Columbus Air Force Base, Jennifer served as the primary caretaker. He acknowledged that his work and flight school training consumed most of his day. I believe the chancellor properly determined that continuity of care weighed in Jennifer's favor.

B. Employment of the parent and responsibilities of that employment.
¶ 34. At the time of trial, both parties were employed. Kevin was in the process of receiving orders for an assignment to Edwards Air Force Base in California. He stated his new assignment as a behavioral scientist for the Air Force was a non-deplorable position requiring normal working hours. However, he did testify that his assignment and his non-deplorable status were subject to change.
¶ 35. This Court has expressed concern in awarding custody to a parent where there is a possibility of deployment. See Belding v. Belding, 736 So.2d 425, 430(¶19) (Miss.Ct.App.1999) (holding that although the father served in a non-deployment position, the potential for his status to change was a concern and should be considered when determining custody).
¶ 36. At the time of trial, Jennifer was employed as a computer technician at the Mississippi School for Math and Science. She was also in the process of receiving a degree in elementary education from the Mississippi University for Women. She testified that her current job and her future career as a teacher would allow her to be home with her son on weekends, holidays and during summer vacations.
¶ 37. Kevin stated that until he received his orders, he could not begin the process of enrolling his son in the day care program at the base. He mentioned that until his son was enrolled he would allow his parents to care for the child. Jennifer stated that she had already enrolled her son into a day care program.

C. Physical and mental health and age of the parents.
¶ 38. The majority contends that although the chancellor did rule that this factor favored Kevin, the chancellor should have applied greater weight to this factor in determining custody. The Mississippi Supreme Court has stated that "one factor should not outweigh another." Hollon v. Hollon, 784 So.2d 943, 951(¶36) (Miss. 2001).
¶ 39. It is also evident that the chancellor took into consideration the improvements Jennifer has made in her life. At the time of trial she was employed and was attending school. Her counselor, Steven Garner, testified that Jennifer was properly taking her medication and was attending therapy sessions regularly. The counselor concluded that Jennifer's condition would not interfere with her ability to raise her son. This Court has stated that "should such progress indeed prove fleeting, the remedy of modification is [always] available." *378 Boaz v. Boaz, 817 So.2d 627, 629(¶ 16) (Miss.Ct.App.2002).

D. Stability of home environment.
¶ 40. Finally, the majority holds that the chancellor erred in finding in favor of Jennifer on the factor of stability of the home environment. The chancellor stated that both parties had sufficient homes to care for the child. Because Kevin was receiving a new assignment, the chancellor held in favor of Jennifer. The chancellor determined that Kevin's future living arrangement could not be examined by the court at the time of trial and weighed this factor in Jennifer's favor. The chancellor had sufficient evidence to support her decision.

E. Age of child.
¶ 41. At the time of trial, the child was three years old. The chancellor held that this factor favored neither parent because the child was a male and had been in the care of his grandparent's for the past year. I do not question the chancellor's ruling on this matter.
¶ 42. This Court has consistently held that Miss.Code Ann. § 93-5-24(7), has not completely terminated the tender years doctrine but has only significantly weakened it. Masino v. Masino, 829 So.2d 1267, 1271(¶ 15) (Miss.Ct.App.2002); Gutierrez v. Bucci, 827 So.2d 27, 31 (¶ 17) (Miss. Ct App.2002); Daniel v. Daniel, 770 So.2d 562, 566(¶ 13) (Miss.Ct.App.2000). "[A] presumption that a mother is generally better suited to raise a young child" is still a viable factor to consider when determining custody. Hollon, 784 So.2d at 947(¶14).
¶ 43. I believe the chancellor carefully considered all of the Albright factors in awarding custody to Jennifer, and I would affirm her decision.
KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.