970 So.2d 254 (2007)
Vondell O. SUMRALL, Appellant
v.
Heather Marie SUMRALL, Appellee.
No. 2006-CA-01156-COA.
Court of Appeals of Mississippi.
December 11, 2007.
*255 Jay L. Jernigan, Hattiesburg, attorney for appellant.
Michael D. Mitchell, attorney for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
BARNES, J., for the court.
¶ 1. Vondell Sumrall appeals the judgment of the Jones County Chancery Court, which awarded custody of his son to the child's mother, Heather Sumrall. We affirm the chancellor's judgment.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Heather conceived Vondell Sumrall's child when she was sixteen and he was approximately twenty-two years old. The couple was not married at the time but subsequently married, and on January 19, 2000, Luke Sumrall, the child at issue, was born. The couple lived in a trailer next to Vondell's parents in Jones County, Mississippi. No other children were born of the union. After approximately one and one-half years of marriage, the couple separated. Heather and Luke moved to Gatesville, Texas, where her mother lived. Heather procured a job at a Wal-Mart in Gatesville and has been working for Wal-Mart ever since. Since the separation, Vondell has continued to live next door to his parents and currently resides in a FEMA trailer as Hurricane Katrina rendered his own trailer uninhabitable.
¶ 3. In January 2002, the couple agreed to a temporary order in Jones County Chancery Court, whereby the parties had joint legal and physical custody of Luke.[1] The parties were ordered to exchange physical custody every fourteen days until further notice. No child support payments were ordered for either party.
¶ 4. After Heather separated from Vondell, but while still married to him, she started dating and living with another man, Jason Loftin, in Texas. The couple had a child together, Isaac. This relationship went on for several years. In 2005, once Luke was ready to start kindergarten in Texas, evidence proved Vondell and Heather had an oral agreement that Luke would live with Heather during the school year and visit Vondell during holidays, as the fourteen-day custody schedule currently in place was unworkable with Luke entering school. When Luke was visiting Vondell and his parents in Jones County *256 over the 2005 Thanksgiving holidays, Vondell refused to return Luke to Heather in Texas and filed a complaint for divorce and for custody of Luke. Vondell did not allow Luke to visit his mother until an agreed order, executed in March 2006, awarded Vondell temporary custody and Heather visitation rights over spring break. Finally, in March 2006, Heather counterclaimed for divorce and custody of Luke.
¶ 5. On June 13, 2006, a trial ensued on the issue of custody only since the couple agreed to and were granted a divorce based on irreconcilable differences. At the hearing the chancellor heard testimony from Heather, Vondell and Vondell's father. Neither parent claimed the other was unfit. Heather acknowledged living in three or four cities in Texas since her separation from Vondell. Heather also testified that she and Jason were no longer living together, but she admitted she had a new boyfriend, twenty-four-year-old Michael Walker, with whom she had lived in Hamlin, Texas for about one year. Michael is employed at a factory in Texas. She and Michael plan to marry, buy a house and have children once these proceedings are concluded. Heather testified Michael loves her children and treats them as his own. However, she expressed no objections to Vondell being granted liberal visitation with Luke.
¶ 6. Vondell testified that the reason he wanted custody of Luke was because Heather had moved around frequently, she had lived with two different men since their separation, and he wants to put Luke in school in Jones County. Testimony was undisputed that Vondell's parents take care of Luke when he comes to visit and Luke prefers his grandparent's home to Vondell's FEMA trailer. Vondell testified he was making plans to repair his own trailer but had not begun doing so. He testified to working at various jobs over the years as a roustabout, as well as employment at Wayne Farms, Laurel Machine and Foundry, a sawmill, Odom Industries, Howard Industries, and his father's company overseeing oil wells. However, at the present time he admitted his employment is taking care of his parents, who both have various health problems. For his help around the house, his parents pay him $1,000 per month and pay all of his bills. Specifically, Vondell testified to cutting the grass one time a week, running errands and helping in the garden.
¶ 7. After applying the Albright factors, the chancellor awarded Heather custody of Luke during the school year. The chancellor explained Luke could visit his father and grandparents during the summer months as well as during some holidays. The chancellor also ordered Vondell to begin paying child support at the statutory rate of fourteen percent of his take-home pay and to notify Heather of any changes in his employment status. Vondell subsequently perfected his appeal regarding the custody issue.

STANDARD OF REVIEW
¶ 8. Matters of child custody fall within the sound discretion of the chancellor. Sturgis v. Sturgis, 792 So.2d 1020, 1023(¶ 12) (Miss.Ct.App.2001). Accordingly, this Court's standard of review is limited by the substantial evidence/manifest error rule. Pearson v. Pearson, 761 So.2d 157, 162(¶ 14) (Miss.2000). This Court will affirm the chancellor's decision unless the decision is manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Roberson v. Roberson, 814 So.2d 183, 184(¶ 3) (Miss.Ct.App.2002). Substantial evidence from the record must support the chancellor's decision. Id.

*257 DISCUSSION
¶ 9. Vondell raises one issue: whether the chancellor erred in applying the Albright factors regarding Luke's custody. Specifically, Vondell takes issue with the court's finding in one factor, that Heather's two sons from two different men should not be separated. Additionally, Vondell argues that the chancellor failed to articulate and apply the Albright factors, as well as weigh the factors correctly. We find the chancellor did not err.
¶ 10. In determining child custody, the chancery court's primary consideration "is the best interest of the child, not marital fault." Rushing v. Rushing, 724 So.2d 911, 916(¶ 24) (Miss.1998). The guiding factors for the chancellor, in reviewing the evidence related to child custody and determining which parent should have custody, is articulated in Albright v. Albright, 437 So.2d 1003 (Miss.1983). The factors are:
The age of the child. . . . [which] should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Id. at 1005. Chancellors have the ultimate discretion in weighing the evidence pertaining to each factor. Johnson v. Gray, 859 So.2d 1006, 1013-14(¶ 36) (Miss.2003). However, it is reversible error if the chancellor does not articulate the reasoning behind each finding on each Albright factor. Davidson v. Coit, 899 So.2d 904, 911(¶ 18) (Miss.Ct.App.2005) (citing Powell v. Ayars, 792 So.2d 240, 249(¶ 33) (Miss. 2001)).
¶ 11. In this case, the chancellor discussed, on the record, each Albright factor in arriving at his decision. The majority of factors favored Heather, and the rest were neutral. The chancellor's analysis of the factors is as follows:
1. Age, health and sex of the child.
¶ 12. At the time of the trial Luke was six years old. The chancellor found this fact did not favor either parent. Luke's "health" problem regarding lack of toilet training was not blamed on either parent. The chancellor found this factor neutral, and we find no error.
2. Continuity of care.
¶ 13. The court found "that Vondell has really never exercised any care for Luke," because Vondell's parents basically care for Luke when he visits. Both Vondell and his father testified to this fact. Vondell has lived next door to his parents on land his parents owned for eight years. Usually, Luke spends more time at his grandparents's house than at Vondell's because it is more suitable for a child.
¶ 14. While Vondell's parents are happy to care for Luke, the chancellor found this factor favored Heather, because the evidence showed that when she had custody of Luke she was his primary custodian. Since Heather separated from Vondell and moved to Texas at the age of nineteen, she has taken care of herself and Luke. She found a job at Wal-Mart and has continued to be employed by Wal-Mart, transferring *258 to different stores as she moved. We find no error in the chancellor's analysis of this factor.
3. Parenting skills.
¶ 15. The chancellor ruled in favor of Heather on this factor because he could not find evidence "that Vondell has really been a full time parent, as opposed to Heather, who is a full time parent when he's with her." Again, this finding relates to the testimony which showed when Vondell has custody of Luke, his parents basically take care of all the child's needs, such as cooking, cleaning, laundry, transporting to school, and other parental duties. Alternatively, when Luke is with his mother, she shoulders the responsibility of providing food, clothing, and shelter for her child, without the assistance of her parents. We find no error in this analysis.
4. Willingness and capacity to provide primary care.
¶ 16. Again, the chancellor found in favor of Heather on this factor because when Luke was with her, she was providing the care, whereas when Luke was with Vondell, the grandparents were actually the ones providing care. The chancellor noted that the dispute is between Heather and Vondell, not Heather and Vondell's parents. We find no error.
5. Employment of the parents and responsibilities of employment.
¶ 17. The chancellor considered Vondell unemployed because he did not currently hold a job in the job market, even though his parents pay him $1,000 per month and pay his bills in return for his helping around their house. However, the chancellor found Vondell could obtain and hold down a job if he sought one, as shown by his employment history. At trial, Vondell discussed how his parents were in "bad shape"  his mother, suffering from a bad knee, and his father, a disabled veteran  and therefore they needed help around the house. However, evidence showed these ailments did not hinder them from caring for Luke. In addition, Vondell's sister also lives at home and performs the majority of the inside housework. Vondell argued that he had more time for the child than Heather because of his lax employment situation. However, as stated above, Heather has found stable employment at Wal-Mart for several years. At the time of trial, her position was only part-time, but she had been promised a full-time position. The chancellor found in favor of Heather on this factor, and we find no error.
6. Physical and mental health and age of the parents.
¶ 18. The chancellor noted there was no testimony about either parent being disabled in any way from caring for the child. We find no error in the chancellor deeming this factor neutral.
7. Emotional ties of the parent and child.
¶ 19. The chancellor found this factor neutral, as it was obvious to him that both parents love the child and the child loves them. We find no error.
8. Moral fitness of the parents.
¶ 20. The chancellor found this factor neutral. At trial, Heather admitted that since separating from Vondell, she had lived with two different men without the benefit of marriage. When asked why she did not divorce Vondell sooner, she stated she could not afford it. The chancellor found these facts weighed against Heather's moral fitness as a parent. However, it did not go unnoticed by the chancellor that Vondell had impregnated Heather at the *259 age of sixteen, when he was approximately twenty-two and without the benefit of marriage. We find no error in the chancellor's finding that the parties' moral fitness is neutral.
9. Home, school and community record of the child.
¶ 21. The chancellor noted that Luke was doing well both at school in Texas and in Mississippi. Regarding the home front, however, because Luke has a half-brother, Isaac, who resides with Heather also, the chancellor found it would be in the best interest of the children if the half-brothers were not separated. Isaac is approximately three years younger than Luke. The Mississippi Supreme Court has not articulated a general rule that the best interest of siblings is served by keeping them together; however, that court is "extremely hesitant to separate siblings when their parents divorce." Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997) (citing Sellers v. Sellers, 638 So.2d 481, 484 (Miss. 1994); Franklin v. Kroush, 622 So.2d 1256, 1256 (Miss.1993); Arnold v. Conwill, 562 So.2d 97, 100 (Miss.1990)). Authority has stated in dicta that in all cases the court shall try "to keep the children together in a family unit" because the love and affection of siblings is very important and to deprive them of this association is not in their best interests. Sparkman v. Sparkman, 441 So.2d 1361, 1362 (Miss. 1983) (citing dicta from Mixon v. Bullard, 217 So.2d 28 (Miss.1968)).
¶ 22. Vondell takes issue with this finding since Isaac was born out-of-wedlock and argues a finding in favor of keeping these siblings together will promote adultery and out-of-wedlock children in order for a parent to retain custody. We find no merit to this argument. The chancellor insightfully commented that in custody matters siblings should be able to foster "a life-long relationship" with one another. "That's what they will have left when the parents are gone. They'll have each other, and of course, their families," the chancellor said. Therefore, he found the courts should not deprive children of this relationship because of the acts of the parents. Further, we find that the authority cited above would apply to the half-siblings at issue here. Based on the testimony at trial, there was substantial evidence that the two brothers are close and to separate them would be harmful, difficult, and not in their best interests. We uphold the chancellor's judgment regarding this factor.
10. Preference of the child.
¶ 23. This factor is not applicable to the case at bar as it pertains only to children twelve years of age or older. Miss.Code Ann. § 93-11-65 (Supp.2007); Albright, 437 So.2d at 1005.
11. Stability of home environment and employment of each parent.
¶ 24. The chancellor noted that even though Heather has moved several times, currently it appears that she has created a more stable home situation where she can stay and thrive. Additionally, her employment history has been much more stable than Vondell's. While the chancellor envisioned that Vondell would probably remain in Jones County, living next to his parent's home, he ruled this factor favored Heather because of Vondell's sporadic employment history with numerous jobs, and the fact he did not have a job at the time of trial. We find no error in this regard.
12. Other relevant factors.
¶ 25. No other relevant factors were discussed by the chancellor. Therefore, this factor is not applicable.

*260 CONCLUSION
¶ 26. After a careful review of the record, we find the chancellor's findings were supported by substantial, credible evidence from the record. The chancellor sufficiently articulated the rationale behind each of his findings for each Albright factor that applied. We find no error in the chancellor's awarding custody of Luke to Heather. Accordingly, we affirm the chancellor's judgment.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] Originally the temporary order was part of a separate action, which was later consolidated with the instant case.