RUSSELL, J.,
for the Court:
¶ 1. Shayna Hamby appeals the chancery court’s order granting sole physical custody of the parties’ minor child to her former husband, Darin Hamby. She raises three issues on appeal: (1) whether the chancery court erred in finding that the parenting-skills factor was neutral under an Albright[1] analysis; (2) whether the chancery court erred in finding that the moral-fitness factor was neutral; and (3) whether the chancery court erred in finding that the best interests of the minor child favored Darin. Upon review, we find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Shayna and Darin were married on August 5, 2005. On March 1, 2006, Shay-na gave birth to the couple’s minor child, Jackson. Shortly after Jackson’s birth, Shayna and Darin began experiencing marital problems, and they finally separated on March 28, 2007. Prior to the separation, Jackson lived with Shayna; Darin; and Jackson’s two half-siblings, Alexis, a fifteen-year-old female child, and Landon, a twelve-year-old male child.
¶ 3. On March 30, 2007, Shayna filed a complaint for divorce in the Madison County Chancery Court. On August 21, 2007, Darin filed a petition for temporary relief seeking temporary visitation rights with Jackson since Shayna was keeping Jackson from him. On August 23, 2007, a *336 temporary hearing was held. On August 31, 2007, a temporary order was entered granting temporary physical custody of Jackson to Shayna and supervised visitation to Darin every week on Tuesday and Thursday, from 7:00 a.m. to 7:00 p.m. Darin’s visitation was to be supervised by Darin’s mother, Patricia Hamby. Darin was also ordered to submit to ham-follicle drug tests. Finally, the chancery court appointed John Gilmore as the guardian ad litem (GAL) in the case.
¶ 4. The GAL filed his first report on February 6, 2008. The GAL found that it would be in Jackson’s best interests to remain in Shayna’s sole physical custody, with Darin to continue supervised visitation.
¶ 5. On February 25, 2008, Darin filed a petition to modify custody and for contempt, and on March 7, 2008, a hearing was held on this petition. On May 20, 2008, the chancery court entered an order modifying the temporary order of visitation dated August 31, 2007. The chancellor determined that Darin’s visitation should continue to be supervised until September 7, 2008, but that after such date, Darin would enjoy standard visitation. The chancery court also ordered Darin to continue to submit to random hair-follicle drug screens.
¶ 6. The case was set for trial on January 23, 2009. Prior to that date, on January 6, 2009, Shayna was involved in a car accident, which her attorney argued prohibited Shayna from attending the January 23, 2009 trial setting. Shayna’s attorney also requested a continuance and to withdrawal as counsel. The chancery court granted a continuance and granted Shayna ten days to retain another attorney. Then, Darin’s attorney made an oral motion to temporarily modify custody to Darin since Shayna was recovering from the car accident. The GAL did not oppose Darin’s motion. Consequently, on January 23, 2009, the chancery court entered an order transferring temporary physical custody of Jackson to Darin, with visitation to Shay-na, until the matter could be fully heard on the merits.
¶ 7. On January 29, 2009, Shayna, with the aid of a new attorney, filed a motion to reconsider, alter, or amend, and in the alternative, for a new trial. On March 17, 2009, Shayna filed an emergency petition to modify temporary custody. The chancery court denied both the motion and the petition filed by Shayna.
¶ 8. On May 8, 2009, the GAL submitted a second GAL report. The GAL recommended that physical custody be returned to Shayna, with visitation to Darin.
¶ 9. On June 24, 2010, the parties entered into a consent order and stipulation for trial. Shayna withdrew her fault-based grounds for divorce and agreed to proceed on the ground of irreconcilable differences. The parties agreed to allow the chancery court to decide issues relating to the custody and support of Jackson.
¶ 10. On July 21, 2010, the GAL filed a third GAL report. The GAL again recommended that physical custody be returned to Shayna, with visitation to Darin.
¶ 11. The first day of the three-day trial was held on July 21, 2010. Because the trial was not completed on that day, on July 23, 2010, the chancery court entered an amended temporary order, which granted Darin continued temporary physical custody of Jackson and visitation to Shayna. The trial resumed on January 19, 2011, and January 21, 2011.
¶ 12. On May 6, 2011, the chancery court entered a final judgment of divorce. Darin was awarded sole physical custody of Jackson, and the parties were awarded joint legal custody. Shayna was awarded standard visitation. Shayna appealed.
*337 DISCUSSION
¶ 13. “A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous.” McDonald v. McDonald, 39 So.3d 868, 879 (¶ 33) (Miss.2010) (quoting Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009)). “A chancellor’s conclusions of law are reviewed de novo.” Id. (quoting Lowrey, 25 So.3d at 285 (¶ 26)).
¶ 14. In this case, Shayna challenges the chancellor’s Albright analysis. “In all cases involving child custody, including modification, the polestar consideration is the best interest and welfare of the child.” Wilson v. Wilson, 79 So.3d 551, 566 (¶ 63) (Miss.Ct.App.2012) (quoting D.M. v. D.R., 62 So.3d 920, 923 (¶ 11) (Miss.2011)). “The Albright factors are a guide for chancellors in weighing the facts to determine the child’s best interest. An Albright analysis is not, by any means, a mathematical equation.” Id. (citing Lee v. Lee, 798 So.2d 1284, 1288 (¶ 15) (Miss.2001)). Further, these “factors are not meant to be weighed equally in every case.” Id. (citing Divers v. Divers, 856 So.2d 370, 376 (¶ 27) (Miss.Ct.App.2003)). That is, “[i]n some cases, one or two factors may weigh more heavily and control the custody determination.” Id. Thus, while all of the Albright factors are important, “the chancellor has the ultimate discretion to weigh the evidence the way he sees fit.” Id. (quoting Johnson v. Gray, 859 So.2d 1006, 1013-14 (¶ 36) (Miss.2003)).
¶ 15. The Albright factors are as follows:
(1) the child’s age, health, and sex; (2) which parent had the continuity of care before the separation; (3) which parent has the best parenting skills; (4) which parent has the willingness and capacity to provide primary child care; (5) each parent’s employment and its responsibilities; (6) each parent’s physical and mental health and age; (7) the emotional ties between the child and each parent; (8) each parent’s moral fitness; (9) the child’s home, school and community record; (10) the child’s preference, if the child is over twelve years old; (11) the stability of the home environment; and (12) any other relevant equitable factor.
Wilson, 79 So.3d at 566 (¶ 64). Because Shayna only challenges the parenting-skills factor, the moral-fitness factor, and the best interests of the child, we only address these factors below.
I. Whether the chancery court erred in finding that the parenting-skills factor was neutral.
¶ 16. In this case, the chancery court found that the parenting-skills factor favored the parties equally as follows:
Over the past five years,' both parents have complained of the other’s behavior, from Shayna’s alienation of Jackson from his father[,] to Darin dropping Jackson. The GAL reported no abuse or neglect on the part of either parent. The [c]ourt weights (sic) this factor equally in favor of both parties.
¶ 17. Relatedly, the chancellor noted the following under the other-factor prong of the Albright analysis:
Shayna and her mother share the same home. They have demonstrated what a strong force they can be in achieving a desired end. They also demonstrated the length that they are willing to go to achieve that end. Regarding Mr. Nix, [Landon’s father,] ... they showed this [c]ourt how they could disrupt the relationship between a father and his son. It was clear to the [c]ourt that Mr. Nix was afraid to testify truthfully before the court after [Shayna’s mother,] Victoria Russum[,] confronted him about appearing in court. It is important that *338 Jackson have a relationship with his father, a relationship that is based upon genuine love and affection, and not one that is manipulated by his mother and grandmother. This factor favors Darin.
¶ 18. We cannot say that the chancellor’s finding pertaining to the parenting-skills factor was manifestly wrong or clearly erroneous. The record was filled with instances of Shayna’s attempts to alienate Jackson from Darin. When Shayna had temporary physical custody of Jackson, she would repeatedly prevent Darin from seeing Jackson. This Court has held that a parent’s attempt to alienate a child from the other parent reflects poorly on the parent’s parenting skills. See Blakely v. Blakely, 88 So.3d 798, 804 (¶ 24) (Miss.Ct.App.2012). On the other hand, when Darin had temporary physical custody of Jackson, Darin never interfered with Shayna’s visitation rights. In fact, Darin allowed Shayna hundreds of extra days of visitation with Jackson.
¶ 19. We also note that Darin exhibited some strange parenting behaviors, which were mentioned in the GAL’s report:
Darin has strange parental habits. Jackson is his first child and only child. During the marriage, Darin undertook some of the parental duties for Shayna’s children, Alexis and Landon. It was reported that as discipline, Darin put locks on the refrigerator and cabinets so the children could not get to the food. On another occasion, he grounded Alexis from her clothes and put a lock on her closet. He later grounded her from her room, in which he locked her room and made her sleep on the couch. He also removed her bedroom door on another occasion.... At least twice, Darin locked Landon out of the house in cold weather without a coat, because Landon left the door open.
However, the GAL obtained this information from Shayna, and Darin refuted some of these allegations at trial. Specifically, Darin testified that Shayna was the one who insisted on putting locks on the food cabinets so that the children would not eat her food. Darin also stated that Shayna was the one who insisted on removing Alexis’s door. “The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence ..., are primarily for the chancellor as the trier of facts.” Love v. Love, 74 So.3d 928, 933 (¶ 22) (Miss.Ct.App.2011) (quoting Johnson, 859 So.2d at 1014 (¶ 36)). We cannot say that the chancellor was manifestly wrong in finding that the parenting-skills factor was neutral. This issue is without merit.
II. Whether the chancery court erred in finding that the moral-fitness factor was neutral.
¶20. The chancery court found that the moral-fitness factor favored neither party as follows:
According to the GAL, Darin readily admits that he has a troubled past. He acknowledges his substance abuse and recognizes that overcoming addiction is a daily process. Darin represented to the [c]ourt and the GAL his confidence that he would be able to continue to stay clean and sober. He reported that he had attended Providence Church in Pearl, Mississippi for several months until it closed. He now attends the First Assembly Church in South Jackson, Mississippi. Darin admitted having a relationship with at least two (2) women during the time of the parties’ four (4) year period of separation, when he had temporary custody of Jackson. These relationships include sexual involvement out of the presence of Jackson. His ex-girlfriend, Jill Albritton, indicated that she did not spend the night when Jack *339 son was present, but that she did go on an overnight camping trip with Darin and Jackson[,] at which she had her own tent.
According to the GAL, “Shayna indicated that she has a history of choosing the wrong kind of man. She indicated that she did not drink, but Darin related that she was a social drinker.” However, on a number of occasions, Shayna appeared to have been saying whatever she need[ed] to say to regain custody of Jackson. It did not matter whether what she said was truthful or not. The GAL acknowledged Shayna’s inclination to lie, but indicated that he was not bothered by it. The [c]ourt is bothered by lies that Shayna may have told the [c]ourt and even more bothered that the GAL, an officer of the [c]ourt, is not bothered by such behavior.
Darin appeared to be open and honest regarding his moral failures. The [c]ourt does not condone them, but can respect him for acknowledging them and attempting to rehabilitate himself. On the other hand, if Shayna will not tell the truth regarding one thing, she cannot be relied on to tell the truth about others. Shayna indicated that she and her family attend New Life Christian Church in Pearl, Mississippi. This factor favors neither party.
¶ 21. Shayna argues that the moral-fitness factor should have favored her because Darin is a recovering addict and Darin had several women around Jackson while Darin and Shayna were separated. We note that at the time of the trial, Darin had been sober for almost five years. See Smullins v. Smullins, 77 So.3d 119, 129 (¶ 45) (Miss.Ct.App.2011) (upholding an award of physical custody to a father who had been sober for one year); Staggs v. Staggs, 919 So.2d 112, 119 (¶ 80) (Miss.Ct.App.2005) (upholding an award of physical custody to a mother who had been sober for twenty-eight months). Darin was very open and honest about his addiction, and he testified that recovery is a daily process. Darin further testified that he attends weekly Alcoholics Anonymous (AA) meetings and weekly meetings at the church for recovering addicts. Darin also stated that he and Jackson attend church five days per week, and that he is a very active member of his church.
¶ 22. Regarding Darin’s romantic relationships, Darin admitted seeing several women while he was separated from Shay-na. In Carr v. Carr, 480 So.2d 1120, 1128 (Miss.1985), our supreme court held the following regarding adultery and a parent’s moral fitness:
[M]oral fitness of a parent encompasses the charge of adultery. But moral fitness is but one factor to be considered, and it is a factor worthy of weight in determining the best interest of the child. Adultery of a parent may be an unwholesome influence and an impairment to the child’s best interest, but on the other hand, [it] may have no effect. The trial court should consider this factor along with all others when making original custody determinations. And as stated in Albright, marital fault should not be used as a sanction in custody awards.
¶ 23. In this case, Darin admitted that he had sexual intercourse with some of the women, and that he brought some of the women around Jackson. However, Darin acknowledged that it was not the situation he wanted for Jackson, and that he “never wanted [Jackson] to have to go through what Shayna’s children have had to go through with all of the stepfathers and the mommy’s special friends situations.” Darin further stated that he was not intimate with any of the women in Jackson’s presence. We find that the chancellor consid *340 ered Darin’s romantic relationships under the moral-fitness factor, and that it was within the chancellor’s discretion to find that this factor was neutral, especially in light of Shayna’s untruthfulness on the witness stand.[2] This issue is without merit.
III. Whether the chancery court erred in finding that the best interests of the child favored Darin.
¶ 24. The chancery court found that the best interests of the child favored Darin as follows:
When considering the best interest of the child, the GAL stresses the importance of Jackson not being separated from his two (2) older siblings. The two (2) older siblingfs] live[ ] with Shayna. In support of his reasoning[,] he quoted Sumrall v. Sumrall, 970 So.2d 254 [ (Miss.Ct.App.2007) ]. This [c]ourt acknowledges the importance of Jackson maintaining a relationship with his older siblings[;] however, it is equally important that Jackson maintains a relationship with his father. Darin expresses the fear that if given the opportunity, Shayna would alienate Jackson from him. This fear was validated by Shayna and her mother. During the trial, Darin subpoenaed Mr. Nix, the father of [Jackson’s half-brother], as a witness. The man appeared to have been terrified. His son had stopped communicating with him and it was admitted that Shay-na’s mother, Victoria Russum, threatened him outside the courtroom while he was waiting to testify. This factor favors Darin.
¶ 25. Shayna’s main argument is that the chancellor erred in splitting up her two older children from Jackson. “There is no rule that requires chancellors to keep siblings together. There is a preference for keeping siblings together, but the paramount concern is the best interest of the child.” Davis v. Stevens, 85 So.3d 943, 951 (¶ 35) (Miss.Ct.App.2012). “Separation of siblings ... ‘is only one factor’ to be considered in making a custody award.” Id. (quoting Wells v. Wells, 35 So.3d 1250, 1257 (¶ 28) (Miss.Ct.App.2010)); see also Kimbrough v. Kimbrough, 76 So.3d 715, 726 (¶¶ 63, 66) (Miss.Ct.App.2011) (holding that the chancellor did not abuse his discretion in separating half-siblings). We cannot say that the chancellor abused her discretion in separating Jackson from his step-siblings, especially in light of the fact that Shayna had a history of alienating her children from their fathers. This issue is without merit.
¶ 26. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

. For example, Shayna was untruthful regarding the reason she did not attend the prior hearing after her car accident. She was also untruthful about other things, such as how many marriage counselors she and Darin had seen, and the extent to which Darin granted Shayna additional visitation while Jackson was in Darin’s temporary physical custody.