853 So.2d 834 (2003)
Kevin Conrad MIXON, Appellant,
v.
Ida Beatrice Mixon SHARP, Appellee.
No. 2002-CA-01141-COA.
Court of Appeals of Mississippi.
August 12, 2003.
*836 Earl P. Jordan, for appellant.
Ida Beatrice Mixon Sharp (Pro Se), for appellee.
Before McMILLIN, C.J., THOMAS, MYERS and CHANDLER, JJ.
MYERS, J., for the court.
¶ 1. Beatrice Mixon Sharp filed a petition for modification of custody on June 1, 2000, in the Chancery Court of Clarke County. The chancellor, after several days of testimony, granted Sharp's motion. Sharp's ex-husband, Kevin Conrad Mixon, now appeals the chancellor's decision, asserting the following issues:
I. Whether a material change in circumstance that was adverse to the best interest of the child existed.
II. Whether the chancellor erred in modifying custody by not properly considering *837 and weighing each of the Albright factors on the record.
III. Whether the chancellor erred in awarding Sharp attorney fees in this modification action.

Facts and Procedural History
¶ 2. Mixon and Sharp were divorced by the Chancery Court of Clarke County on June 1, 1994. Simultaneously, Mixon was awarded primary custody of their minor child, Amber Beatrice Mixon. Sharp was granted visitation and ordered to pay child support to Mixon.
¶ 3. From spring of 1998 to June 1, 2000, Sharp did not visit with Amber. Sharp claims this is because Mixon would not allow her to have access to their daughter. Mixon claims that Sharp told him she was moving to Tennessee and could no longer visit with Amber. During this time, Sharp began to volunteer at Quitman Lower Elementary School, the school that Amber attended at the time, admittedly to see Amber. When Amber transferred to another school district, Sharp stopped volunteering at the school. From the time the motion for modification was filed until the hearing on the motion was held, Sharp was allowed to visit with Amber.
¶ 4. Since their divorce, Sharp has been remarried twice, and has lost custody of another child to the Clarke County Department of Human Services. She has also been arrested for public intoxication and indecent exposure. She is currently a part-time student at the University of West Alabama, and has no employment. Sharp's current husband is a construction worker in Texas. Sharp resides in Quitman, Mississippi, and has no plans to move to Texas to be with her husband.
¶ 5. Mixon has also remarried and currently lives in Lauderdale County, Mississippi, with his new wife and her two children. At the time of the divorce, he worked during the day, but since being remarried, he has switched to working nights.
¶ 6. The chancellor heard testimony, and in a memorandum opinion, granted Sharp's motion for modification. Sharp now has primary custody of Amber, with Mixon having visitation. Mixon must now pay child support to Sharp.

Standard of Review
¶ 7. Our standard of review in child custody cases is well settled. "[T]he chancellor must either commit manifest error, act in a way that is clearly erroneous, or apply an erroneous legal standard before this Court can reverse." Passmore v. Passmore, 820 So.2d 747, 749(¶ 5) (Miss. Ct.App.2002).

Legal Analysis
I. Whether a material change in circumstance which was adverse to the best interest of the child existed.
¶ 8. A change in child custody should only be undertaken when there is a material change in circumstances which would suggest that a change of custody is in the best interest of the child. Before undertaking a possible change of custody, the court must first identify the specific material changes in circumstances, which make such a consideration appropriate. Sturgis v. Sturgis, 792 So.2d 1020, 1023(¶ 13) (Miss.Ct.App.2001). We find that no such material changes in circumstances exist in this case.
¶ 9. The chancellor found the following to constitute a material change of circumstances which adversely affects Amber: Mixon's alleged interference with Sharp's visitation, Mixon's work schedule, and problems between Amber and her step-siblings. We will speak to each of these criteria individually.
*838 ¶ 10. First, the chancellor found that Mixon interfered and prevented Sharp from exercising her visitation with Amber. In Ash v. Ash, 622 So.2d 1264, 1266 (Miss. 1993), the Supreme Court of Mississippi held that a mother's refusal to allow the child's father to visit with the child did not constitute a material change in circumstances. "The better rule would be for a chancellor to enforce contempt orders through incarceration, when necessary, to insure compliance with custody provisions rather than resorting to a change of custody" Id. If the chancellor found Mixon has purposely refused to allow Sharp to visit Amber, the chancellor should have incarcerated Mixon. Changing child custody is not appropriate punishment for contempt.
¶ 11. Next, the chancellor found "[Mixon]'s work schedule is not conducive to his providing primary care for Amber...." Mixon did not change his schedule until after he re-married. Until then, he worked days so that he would be able to take care of Amber when she was home from school. We are not aware of any Mississippi cases that directly apply to this case, but guidance may be gained by looking to the case law of other jurisdictions.
¶ 12. In Alabama, a material change in circumstances was found where a custodial parent, after the divorce, began working nights and had no safe and suitable supervision for the child. Davis v. Davis, 451 So.2d 316, 319 (Ala.Civ.App.1984).
¶ 13. In In re Marriage of Whipp, 265 Kan. 500, 962 P.2d 1058 (1998), the Kansas Supreme Court found that a material change of circumstances did occur when the father, who had custody of the daughter, began working nights and moved out of housing he shared with a Ms. McGowan. However, the court appears to have placed emphasis on the fact that the child would no longer be supervised by McGowan, with whom the child had built a close relationship. Id. at 1063-64.
¶ 14. A Missouri case is particularly relevant to the situation before us today. There, a noncustodial father was asserting, inter alia, that the fact the mother began working nights was a material change in circumstances, and the court should therefore award custody of the child to him. Henderson v. Henderson, 622 S.W.2d 7, 10 (Mo.Ct.App.1981). The court found that this was not a material change in circumstances since the mother made adequate arrangements for the care of the child in her absence. Id.
¶ 15. These cases suggest that as long as the child is safe and supervised while the parent must be at work, a change in a work schedule is not a material change in circumstances. That is this Court's holding as well.
¶ 16. Finally, the chancellor thought that the problems Amber had with her step-sister also constituted a material change in circumstances. While our research did not result in any case law to speak to either side of this argument, we hold that such problems are typical in families, let alone step-families, and are best solved as an internal matter within the family. Holding that failure of sibling or step-siblings to get along peacefully is a material change of circumstances would be a dangerous precedent which this Court is not prepared to make.
¶ 17. Finding no material change in circumstances, we hold it was clear error for the chancellor to change the custody of Amber.
II. Whether the chancellor erred in modifying custody by not properly considering and weighing each of the Albright factors on the record.
¶ 18. Our finding on the previous issue makes this issue moot. However, for the *839 sake of thoroughness, we will discuss the Albright factors as they apply in this case.
¶ 19. Once a material change in circumstances as they relate to child custody has been found, the chancellor should use the Albright factors to decide which parent should have custody of the child. Sturgis, 792 So.2d at 1025(¶ 19). These factors, as set forth in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), are: the health and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship. We shall discuss these factors one by one.
¶ 20. The health and sex of the child. Amber was ten years old at the time of the trial and is female. She is in good health. The chancellor found this factor favored Sharp since Amber will soon enter puberty. There is no doubt that is true, however, this fails to consider that Mixon has remarried. In her new family, Amber has a step-mother, with whom Amber gets along very well, and a step-sister to turn to for any questions concerning her becoming a woman. We find, at best, that this factor does not favor either parent.
¶ 21. The parent who has had the continuity of care. For the eight years between her parents' divorce to the trial in this action, Amber has lived with her father. He has been the primary care-giver to her. Admittedly, he has had help with her. Both Mixon's father and his new wife have helped him take care of Amber. Despite this help, this factor weighs in Mixon's favor. The chancellor made a similar finding, but appeared to place greater emphasis on Sharp's willingness to provide care.
¶ 22. Which parent has the best parenting skills and which has the willingness and capacity to provide primary child care. We must find that this factor weighs in Mixon's favor. Sharp has had a child (from a husband different than Mixon and her current husband) removed from her care by the Department of Human Services. That child was later returned to his father. While Sharp is working on a degree in elementary education, we would have great hesitation to award custody to a parent who has been found to be unfit to raise another of her children. It does not appear the chancellor considered this in her finding.
¶ 23. The employment of the parent and responsibilities of that employment. Mixon currently works nights. Sharp is a part-time student, and at the time of the trial, was not employed. She testified that she could arrange her school schedule around Amber's school hours. Sharp was totally dependent upon her husband for income. The chancellor found that the flexibility of Sharp's schedule put this factor in her favor. We believe that this factor is neutral toward both parents. Should Sharp not be able to arrange her school schedule around Amber's school in the future, Sharp will also depend on the mercies of friends and relatives to look after Amber.
¶ 24. The physical and mental health and age of the parents. Both Mixon and Sharp are of similar age and are in *840 good health. This factor favors neither parent.
¶ 25. Emotional ties of parent and child. Amber loves both parents. She misses her mother, but this is to be expected as she is the non-custodial parent. The chancellor made no finding on this factor. We find neither parent is favored by this factor.
¶ 26. Moral fitness of parents. The chancellor found that moral fitness was not at issue in the case. We believe that while it was not a significant issue in the case, it was an issue, as witnessed by questioning Sharp about her arrest record. Sharp has been arrested for public intoxication and for indecent exposure. She has also had a child removed from her custody and placed in the custody of the child's father. Such actions do call into question Sharp's moral fitness. While Sharp asserts that she was recently "saved" before the trial, this testimony is weakened by her failing to take Amber to church for approximately four months preceding the trial.
¶ 27. Mixon has, as far as the record reflects, no arrests, and has not been in trouble with the law. He is a Sunday school teacher at his church, and until recently, was a church officer. This factor favors Mixon.
¶ 28. The home, school and community record of the child. Until Mixon's remarriage, Amber and he lived in Stonewall, Clarke County, Mississippi. She attended the Quitman Consolidated School System. Since the remarriage, Mixon and Amber have moved to Lauderdale County, Mississippi, and Amber now attends school at Clarkdale Attendance Center. Most of Amber's friends are in the Quitman school system. Most of her relatives are in Clarke County. Sharp still lives in Quitman, the county seat of Clarke County. As did the chancellor, we find this factor weighs in Sharp's favor.
¶ 29. The preference of the child at the age sufficient to express a preference by law. Amber was only ten years old. Under Mississippi law, a child under the age of twelve is too young to have their preference considered. Miss.Code Ann. § 93-11-65 (Supp.2000); Thompson v. Thompson, 799 So.2d 919, 925(¶ 23) (Miss. Ct.App.2001). The chancellor noted that Amber was not old enough to have her opinion considered. Nevertheless, the chancellor stated, "She will be at that age in less than two years, and the court has heard and considered her testimony in making findings in this civil action." We will give the chancellor the benefit of the doubt and assume that this factor was not an area where Amber's testimony was considered.
¶ 30. Stability of home environment and employment of each parent. It is unclear whether the chancellor considered this factor. Sharp has held several jobs since her divorce from Mixon. She has remarried twice. Her current husband does not live with her. She is a part-time student and at the time of the trial, unemployed. She has moved to Waynesboro and back to Quitman since the divorce. In the past, she has been in an abusive relationship with an alcoholic. Mixon, on the other hand, has also moved since the divorce when he was remarried. There is always at least one parent at home with the children. He has been with the same employer for fourteen years. This factor favors Mixon.
¶ 31. Upon our review, we find the chancellor's analysis of the Albright factors to be clearly erroneous.
III. Whether the chancellor erred in awarding Sharp attorney's fees in this modification action.
*841 ¶ 32. Mixon is correct in his assertion that attorney's fees are not normally awarded in child custody modification actions. However, this was not just a modification action, but was also an action seeking a finding of contempt. Even though the chancellor did not specifically find Mixon in contempt, she did find that Mixon interfered with the chancery court's previous custody order by denying visitation between Amber and Sharp. A chancellor may award attorney's fees as the result of a contempt action, even where the contempt stems from a domestic relations action. Creel v. Cornacchione, 831 So.2d 1179, 1183-84(¶ 18) (Miss.Ct.App.2002). Additionally, the chancellor made it clear in her order that the fees were awarded as a result of Mixon's interfering with an order of that court. As such, the award of attorney's fees is affirmed.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF CLARKE COUNTY IS REVERSED AND RENDERED AS TO MODIFICATION OF CHILD CUSTODY AND THE AWARD OF ATTORNEY'S FEES IS AFFIRMED. COSTS OF THIS APPEAL ARE TO BE DIVIDED BETWEEN THE PARTIES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.