KITCHENS, Justice,
for the Court:
¶ 1. We granted interlocutory appeal in this case to decide the question of whether the appellee is entitled to assert the presumption that favors the natural parent in child custody proceedings. Because the voluntary surrender of rights in connection with an uncontested, final adoption is irrevocable, we reverse the judgment and remand the case for further proceedings consistent with this decision.
Facts and Procedural History[1]
¶ 2. D.R. (“Danica”)[2] gave birth to E.G. (“Edward”), a boy, on July 10, 2004. Edward’s natural father was F.M. (“Fred”). Danica and Fred were never married to each other. On December 15, 2005, Mr. and Mrs. Gold, Danica’s parents, filed a petition to adopt Edward, which Danica and Fred joined. By agreeing to the adoption, Danica and Fred surrendered their parental rights to Mr. and Mrs. Gold, the adopting parents. The Chancery Court of Leflore County entered the final decree of adoption on the same day the petition was filed, waiving the waiting period in accordance with Mississippi Code Section 93-17-18 (Rev.2004).
¶3. Mr. Gold died on April 25, 2006, about four months after the adoption was final, and Mrs. Gold died on August 25, 2006, about eight months after finalization of the adoption. While Mrs. Gold’s will appointed her son Louis as testamentary guardian for Edward, Louis immediately renounced that appointment. D.M. and M.M. (“the Martins”), Edward’s paternal grandparents, and Danica filed competing petitions for custody and guardianship of Edward. The Chancery Court of Leflore County appointed a guardian ad litem for the child and also appointed a temporary guardian of Edward’s person on September 8, 2006. Pursuant to the guardian ad litem’s recommendation, the Martins were granted temporary physical custody of Edward on May 18, 2007.[3] On July 9, 2007, the chancery court entered an order, referring to a previous order not included in the record on appeal, that granted certain limited visitation rights to Danica.
¶ 4. On November 16, 2007, the chancery court entered its final judgment, awarding guardianship and physical custody of Edward to the Martins. The court found that Danica, having consented to Edward’s adoption, had abandoned him as a matter of law and that she therefore was not entitled to the natural parent presumption. The court ruled that her legal relationship to Edward was that of his sister. The court further found that Danica was “manifestly unsuitable” to be appointed Edward’s guardian, and that the Martins *922 were “manifestly suitable.”[4] The court therefore appointed the Martins as Edward’s guardians and granted them permanent legal and physical custody of the child pursuant to Mississippi Code Section 93-13-13 (Rev.2004).
¶ 5. On September 22, 2009, the chancery court revisited its previous orders granting visitation rights to Danica upon discovering that the Martins were not cooperating concerning her visitation. The court stated that Edward’s best interests required meaningful visitation with Danica, citing the unusual circumstances of the case. The court reasoned that Edward needed to make an informed decision as he grew older as to what sort of relationship he wanted to have with both sides of his family. The court further designated Mississippi’s Access and Visitation Program (MAV-P) to facilitate and implement a visitation program.[5] The parties agreed to supervised visitation administered by the program’s administrator.
¶ 6. On March 29, 2010, Danica filed a motion to change custody and visitation, petitioning the court to award her sole custody of Edward. Danica argued that she should be awarded custody because she was entitled to the natural parent presumption. She further argued that her consent to her parents’ adopting Edward did not constitute abandonment as a matter of law. She also argued that she was not, at the time relevant to her motion, unfit to have custody. Finally, she argued that Edward’s best interest required that she be awarded custody.
¶ 7. The Martins filed their response to Danica’s motion on April 23, 2010. They contended, inter alia, that Danica’s voluntary consent to the 2005 adoption meant that she had abandoned Edward as a matter of law. The Martins cited the chancery court’s ruling in the 2007 judgment that Danica stood as Edward’s sister and not as his mother. The Martins further argued that Danica had evinced a settled purpose forever to relinquish her parental claims respecting this child, and as such, was unable to assert any presumption in her favor with respect to custody.
¶ 8. On May 11, 2010, Danica moved for partial summary judgment on the issue of whether she was entitled to the natural parent presumption, arguing that she had not forfeited the presumption when she had consented to her now-deceased parents’ adoption of Edward. The chancery court granted her motion on June 16, 2010. The record presented on interlocutory appeal does not include findings of fact or conclusions of law in support of the court’s order granting summary judgment.
¶ 9. The Martins filed their motion for reconsideration on June 24, 2010. In that motion, the Martins argued that the decision handed down by the Mississippi Court of Appeals in Adams v. Johnson, 33 So.3d 551 (Miss.Ct.App.2010), meant that Danica had forfeited her presumption in favor of the natural parent both through the adoption and via the chancellor’s previous finding that she was unsuitable to be Edward’s guardian. Danica, in response, argued that a natural parent is entitled to the *923 presumption unless there is a judicial finding of abandonment, desertion, or other acts demonstrating unfitness to rear a child. The chancery court summarily denied the Martins’ motion for reconsideration on July 26, 2010. The Martins then petitioned this Court for interlocutory appeal, which was granted on the sole issue of whether Danica is entitled to the natural parent presumption.
Standard of Review
¶ 10. Questions of law presented to the Court on interlocutory appeal from a trial court’s grant of summary judgment are reviewed de novo. Miss. Dep’t. of Transp. v. Allred, 928 So.2d 152, 154 (Miss.2006); Gant v. Maness, 786 So.2d 401, 403 (Miss.2001).
¶ 11. In all cases involving child custody, including modification, the polestar consideration is the best interest and welfare of the child. Johnson v. Gray, 859 So.2d 1006, 1013 (Miss.2003); Riley v. Doemer, 677 So.2d 740, 744 (Miss.1996).
Discussion
¶ 12. On appeal, the Martins raise two arguments. The first is that an adoption irrevocably terminates the natural parent’s right to rely on the natural parent presumption. The second is that the chancery court’s determination that Danica was manifestly unsuitable to assume Edward’s guardianship after her parents’ deaths bars Danica’s assertion of the natural parent presumption as res judicata. Danica, in turn, argues that her consent to the adoption of Edward by his maternal grandparents was qualified in that she consented only to their adopting the child, and her consent should not be construed as a surrender of her rights to the world.
¶ 13. At the outset, we recognize both the uniqueness of the facts underlying this case and the fundamental liberty interests involved whenever the State interferes with the relationship between parent and child. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (holding that unwed fathers have a fundamental liberty interest that entitles them to due process and equal protection considerations under the Fourteenth Amendment); Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (holding that a state statute regulating visitation rights must meet strict scrutiny before interfering with a parent’s right to control a child’s upbringing); Sinquefield v. Valentine, 159 Miss. 144, 132 So. 81, 83 (1931) (holding that federal constitutional guarantees of due process include parental liberty interests in the “privileges long recognized at common law”). This Court, in examining the interplay of the rights of the natural parent as compared to those of a third party, has stated:
A parent has a constitutionally protected liberty interest in the “companionship, care, custody and management of his or her children.” Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, parental status that rises to the level of a constitutionally protected liberty interest does not rest solely on biological factors, but rather, is dependent upon an actual relationship with the child where the parent assumes responsibility for the child’s emotional and financial needs. As Justice Stewart observed in Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) [Stewart, J., dissenting]: “Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring.”
Griffith v. Pell, 881 So.2d 184, 187-88 (Miss.2004) (quoting A.J. v. I.J., 270 Wis.2d 384, 677 N.W.2d 630, 642 (2004)).
*924 ¶ 14. Guardianship and custody of minor children are governed by Title 93, Chapter 13, of the Mississippi Code of 1972, which treats custody and guardianship in the same manner. Section 93-13-1 (Rev.2004) provides, in relevant part:
The father and mother are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare and education, and the care and management of their estates.... But if any father or mother be unsuitable to discharge the duties of guardianship, then the court, or chancellor in vacation, may appoint some suitable person, or having appointed the father or mother, may remove him or her if it appear that such person is unsuitable, and appoint a suitable person.
¶ 15. Generally, it is presumed that the best interests of the child are served by remaining in the custody of the natural parent. Logan v. Logan, 730 So.2d 1124, 1125 (Miss.1998) (citing Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994)). This Court has held:
[Hjuman experience has demonstrated that as a general rule parental love and solicitude for the child’s welfare are the best guarantee that it will be properly cared for and trained for that station in life for which it will likely be best fitted. The presumption in all cases is that the child’s parents will love it most and care for it better than anyone else and it is in the best interest of the child to leave it in the custody of a parent. In order to overcome this presumption, there must be a clear showing that the parent is unfit by reason of immoral conduct, abandonment or other circumstances which clearly indicate that the best interest of the child will be served in the custody of another.
Moody v. Moody, 211 So.2d 842, 844 (Miss.1968). In In Re Dissolution of Marriage of Leverock and Hamby, 23 So.3d 424 (Miss.2009) (citations omitted), we reiterated that:
In a custody case involving a natural parent and third party, the court must first determine whether through abandonment, desertion, or other acts demonstrating unfitness to raise a child, as shown by clear and convincing evidence, the natural parent has relinquished his right to claim the benefit of the natural-parent presumption. If the court finds one of these factors has been proven, then the presumption vanishes, and the court must go further to determine custody based on the best interests of the child through an on-the-record analysis of the Albright factors.
Id. at 431 (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)).
¶ 16. The Martins argue that Da-nica forfeited the natural parent presumption by abandoning her child when she agreed to his adoption. This Court has defined abandonment as “any conduct on the part of the parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child.” Ainsworth v. Natural Father, 414 So.2d 417, 419 (Miss.1982). We have further stated:
[Abandonment] may result from a single decision by a parent at a particular point in time. It may arise from a course of circumstances. The test is an objective one: whether under the totality of the circumstances, be they single or multiple, the natural parent has manifested his severance of all ties with the child.
Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992).
¶ 17. To support their abandonment argument, the Martins note that Mississippi’s statutes governing adoption favor *925 finality of judgments. Mississippi Code Section 93-17-13 provides, in relevant part,
The final decree [of adoption] shall adjudicate, in addition to such other provisions as may be found by the court to be proper of the protection of the interests of the child; and its effect, unless otherwise specifically provided, shall be that ... all parental rights of the natural parent, or parents, shall be terminated, except as to a natural parent who is the spouse of the adopting parent.
Miss.Code Ann. § 93-17-13 (Rev.2004). Thus, the child’s status as adoptee is equivalent to the natural child of the adoptive parents, and the child’s legal relationship, whatever the individual circumstances, with the natural parent no longer exists. It also is well settled that voluntary consent to an adoption is valid and irrevocable, absent a showing by clear and convincing evidence of fraud, duress, or undue influence. In re Adoption of P.B.H, 787 So.2d 1268, 1272 (Miss.2001) (citing Grafe v. Olds, 556 So.2d 690 (Miss.1990); C.C.I. v. Natural Parents, 398 So.2d 220 (Miss.1981)).
¶ 18. In a similar case, this Court established that a natural parent who voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, forfeits the right to rely on the natural parent presumption at a later date. Grant v. Martin, 757 So.2d 264, 266 (Miss. 2000). In Grant, 757 So.2d 264, the natural parents consented to the grant of custody of their three children to the paternal grandparents. The natural parents later divorced, agreeing that custody would remain with the paternal grandparents, and this agreement was incorporated into their final judgment for divorce. Id. at 265. Two years after the divorce, and roughly four years after relinquishing custody, the mother petitioned for a modification of custody, attempting to assert the natural parent presumption. Id. The chancellor dismissed the mother’s petition, finding that she had “wholly failed to prove a material change in circumstance^] which adversely effected] [sic] the welfare of the minor children.” Id.
¶ 19. The mother appealed and the Court of Appeals reversed and rendered in favor of the mother, holding that a natural parent’s bid for custody must prevail, absent a showing of abandonment or unfitness. Grant v. Martin, 744 So.2d 817, 820 (Miss.Ct.App.1999). This Court disagreed. Upon granting the grandparents’ petition for writ of certiorari, this Court ruled that the natural mother’s consent to the grant of custody of her three children prohibited her asserting the natural parent presumption at a later date. Grant, 757 So.2d at 266. In reaching that conclusion, this Court said:
Because stability in the lives of children is of such great importance, we have carefully weighed the impact of establishing an exception, or a new standard, for such instances. While we do not want to discourage the voluntary relinquishment of custody in dire circumstances where a parent, for whatever reason, is truly unable to provide the care and stability a child needs, neither do we want to encourage an irresponsible parent to relinquish their child’s custody to another for convenience sake, and then be able to come back into the child’s life years later and simply claim the natural parents’ presumption as it stands today.
Id. This Court therefore ruled that, upon relinquishing custody in a valid court proceeding, a natural parent forfeits the presumption and may “reclaim custody of the child only upon showing by clear and convincing evidence that the change in custody is in the best interest of the child.” Id.
¶ 20. Danica does not dispute that she voluntarily relinquished custody with re *926 spect to her parents’ adoption of Edward; she argues, however, that her relinquishment and surrender of her parental rights was effective only with respect to Mr. and Mrs. Gold and is not effective as to anyone else. She cites A.D.R. v. J.L.H., 994 So.2d 177 (Miss.2008), in support of the proposition that consent to an adoption implies that the natural parent’s relinquishment of her rights is effective only with respect to the adoptive parents.
¶21. In A.D.R., the biological father received temporary custody when he challenged an adoption proceeding of which he had not received sufficient notice. Id. The biological mother then filed an action seeking custody of the minor child. Id. The chancellor dismissed the biological mother’s petition for lack of standing, ruling that her consent to the adoption constituted an irrevocable termination of her parental rights, and that she therefore lacked standing to contest custody of the child. Id. at 179.
¶22. On appeal, this Court reversed, ruling that the biological mother’s consent to adoption by one couple did not prevent her seeking custody of the child once the adoption proceeding had been voided by the court. Id. at 183. We recognized that this state’s public policy in favor of an adoption proceeding with as little disruption as possible requires that consent and surrender generally are irrevocable, but held that “where a parent agrees for specific individuals to adopt her child, the adoption fails, and then the parent seeks to regain custody of the child, the policy underlying the relevant Mississippi law is not furthered by preventing the parent from even contesting the custody of her child.” Id. This Court therefore reversed the chancellor’s judgment and remanded the case for proceedings on the merits regarding custody of the child. Id. at 185.
¶28. The facts in A.D.R. are readily distinguishable from the facts in this case. In that case, the adoption was denied because of the biological father’s facial attack on the proceeding. Here, the adoption was made final in due course, and Danica does not contest the validity of the adoption. She instead argues that the adoption failed or is moot because the adoptive parents died, and that, therefore, she should be able to assert the presumption that exists in favor of natural parents.
¶ 24. Cases in which the natural parent attempts to recover custody of a child from a third party after the death of the adoptive parents are rare and apparently without precedent in this state, but the general rule reached by other jurisdictions is that death of the adoptive parents does not reinstate the parental rights of the natural parent. See Thomas v. Garraghty, 258 Va. 530, 522 S.E.2d 865 (1999) (holding that parental rights do not revert to the natural parent after the death of the adoptive parents); Matter of Rooker’s Custody, 43 N.C.App. 397, 258 S.E.2d 828 (1979) (holding that consent to an adoption irrevocably rendered the natural father “a stranger” to the children and therefore not entitled to the natural parent presumption); Cooley v. Washington, 136 A.2d 583 (D.C.1957) (holding parental rights are not reinstated in the natural parent after the death of the adoptive parents); In re MacRae, 189 N.Y. 142, 81 N.E. 956, 957 (1907) (“[Adoption divests the natural parents of the relation which they had theretofore sustained toward the infant, and such change of relation is in no way affected by the death of the foster parent or parents.”). These cases indicate that a valid adoption, pursuant to a statute that is substantively similar to Mississippi’s adoption statute, acts as an irrevocable and unlimited termination of the parent-child relationship that is not voidable upon the death of the adoptive parents.
¶25. Based on the record before this Court, Danica has never attacked her con *927 sent to the adoption of Edward and does not now suggest that her consent to that adoption was procured by fraud, duress, or undue influence. She merely argues that she became entitled to resume the legal parent-child relationship with Edward after the death of her parents. This argument is in plain conflict with the adoption statute and this Court’s prior decisions addressing the irrevocability of the adoption process. Danica consented to the irrevocable termination of her parental rights, and in so consenting, relinquished her legal relationship with Edward as his parent. Therefore, the chancellor rightly determined in the November 17, 2007, order that Danica now stands as Edward’s sister, rather than as his mother, and as such is not entitled to the natural parent presumption with respect to his custody.
Conclusion
¶ 26. An adoption, once entered, acts as an irrevocable surrender of all rights, obligations and privileges of the natural parent with and to the child. This surrender is not invalidated upon the deaths of the adoptive parents, and the natural parent is not entitled to resume the parent-child relationship, including the right to assert the natural parent presumption, upon the occurrence of that event. The order of the Chancery Court of Leflore County is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.
¶ 27. REVERSED AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ„ CONCUR.

. This Court’s order granting interlocutory appeal suspended the requirement that a record be filed. Therefore, we have only the parties’ record excerpts upon which to rely for the factual and procedural history.

. As this case is confidential, pseudonyms have been used throughout this memorandum to protect the identity of the minor child.

. The record presented on interlocutory appeal does not reveal who held physical custody of Edward between September 8, 2006, and May 18, 2007.

. While not explicitly adopting the guardian ad litem's recommendation in its finding that Danica was unsuitable, the court included a summary of the guardian ad litem’s testimony as part of its findings of fact, noting specifically, in addition to Danica's consent to the adoption, that she had a poor work record, had moved three times in the prior eighteen months, and had given birth to another child out of wedlock.

. The MAV-P is a program administered by the Child Support Enforcement Division of the Mississippi Department of Human Services. www.mdhs.state.ms.us/cse_mavp.html (last visited March 25, 2011.)