IRVING, P.J.,
for the Court:
¶ 1. Nicole Tidmore appeals the DeSoto County Chancery Court’s award of attorney’s fees to her former husband, Michael Tidmore. She raises one issue on appeal: whether the chancellor erred by entering a judgment against her for the full amount of Michael’s attorney’s fees. Michael cross-appeals, asserting two issues: (1) whether the chancellor erred in awarding sole legal and physical custody of the minor children to Nicole; and (2) whether the chancellor erred in awarding only standard visitation to him. Upon review, we affirm the awards of custody and visitation. However, we reverse the chancellor’s award of attorney’s fees to Michael and remand this case for a determination of the amount of attorney’s fees that should be awarded for the contempt proceedings and the unsubstantiated-allegations-of-abuse proceedings.
FACTS
¶ 2. Michael and Nicole were married on August 21, 2003. On October 26, 2004, the couple welcomed twin daughters.[1] The parties separated on March 16, 2006, and a divorce was granted on the ground of irreconcilable differences on June 12, 2008. The parties were awarded joint physical and legal custody of the twins, with each having custody of the children for a one-week period, beginning Monday at 5:00 p.m. and ending on the following Monday at 5:00 p.m. Further, whichever party did not have custody during the week was entitled to extended visitation from Wednesday at 5:00 p.m. until the following Friday morning when the children were dropped off at school.
¶ 3. On July 26, 2010, Michael filed a petition for contempt, modification of custody, and temporary relief. Michael alleged that there had been a material change in circumstances since the entry of the last custody order, and that it would be in the children’s best interests for him to be awarded sole physical and legal custody, with visitation to Nicole. Michael also alleged that Nicole was in contempt for: (1) failing to exchange information concerning the health, education, and welfare of the children; (2) failing to pay her portion of medical bills and health insurance for the children; and (3) filing the children’s daycare expenses on her tax return when Michael had actually paid such expenses.
*757 ¶ 4. On November 16, 2010, Nicole filed an answer and counter-petition to modify custody, visitation, and child support; to appoint a guardian ad litem (GAL); and to cite Michael for contempt. Nicole alleged that there had been a material change in circumstances since the entry of the last custody order, and that it would be in the children’s best interests for her to be awarded sole physical and legal custody, with visitation to Michael. Nicole also made allegations of abuse[2] against Michael and requested that the court appoint a GAL to investigate. Finally, Nicole alleged that Michael was in contempt for: (1) failing to pay insurance premiums for the children; and (2) claiming one of the girls as a dependent on his tax return.
¶ 5. On November 19, 2010, Michael filed a motion to appoint a GAL in response to Nicole’s allegations of abuse. On December 1, 2010, the chancellor entered an order of continuance and a stay of proceedings pending the Mississippi Department of Human Services (DHS) investigation. The chancellor also appointed Kimberly Jones as the GAL and ordered Nicole to submit an outline of facts detailing the specific instances of alleged abuse.
¶ 6. On October 12, 2011, after a full trial, the chancellor entered a final judgment granting Nicole sole physical and legal custody of the children. Michael was awarded visitation every other weekend— the first and third weekends of each month — from Friday at 6:00 p.m. until Sunday at 6:00 p.m. He was also awarded six weeks of visitation during the summer, along with standard holiday visitation. The chancellor also ordered Nicole to pay Michael’s attorney’s fees and the GAL fees.
¶ 7. Nicole appealed the award of attorney’s fees, and Michael cross-appealed the order granting Nicole sole custody and granting him only standard visitation.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 8. “Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence[.]” Wilson v. Wilson, 79 So.Sd 551, 560 (¶ 37) (Miss.Ct. App.2012) (quoting Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss.2000)). This Court “will not disturb a chancellor’s factual findings unless the chancellor’s decision was manifestly wrong or clearly erroneous, or the chancellor applied an improper legal standard.” Id. (citing Wallace v. Wallace, 12 So.3d 572, 575 (¶ 12) (Miss.Ct.App.2009)). “We do not substitute our ‘judgment for that of the chancellor, even if we disagree with the findings of fact and would arrive at a different conclusion.’ ” Id. (quoting Coggin v. Coggin, 837 So.2d 772, 774 (¶ 3) (Miss.Ct.App.2003)). “[W]hen reviewing a chancellor’s interpretation and application of the law, our standard of review is de novo.” Id. (citing Tucker v. Prisock, 791 So.2d 190, 192 (¶ 10) (Miss.2001)).

I. Award of Attorney’s Fees to Michael

¶ 9. “The matter of awarding attorney’s fees is largely entrusted to the sound discretion of the chancellor.” Evans v. Evans, 75 So.3d 1083, 1089 (1122) (Miss.Ct.App.2011) (citing McKee v. McKee, 418 So.2d 764, 767 (Miss.1982)). Therefore, “[w]e are reluctant to disturb a chancellor’s discretionary determination whether to award attorney’s fees or the amount of any award.” Id. (citing Smith v. Smith, 614 So.2d 394, 398 (Miss.1993)).
*758 ¶ 10. Nicole argues that the chancellor erred in awarding attorney’s fees to Michael since some of the attorney’s fees were incurred in pursuing a modification of custody. We note that “attorney’s fees are not normally awarded in child custody modification actions.” Mixon v. Sharp, 853 So.2d 834, 841 (¶32) (Miss.Ct.App.2003). However, it is well established that “[a] chancellor may award attorney’s fees as the result of a contempt action” in a domestic-relations case. Id. “One of the purposes for awarding attorney fees [in a contempt action] is to compensate the prevailing party for losses sustained by reason of the defendant’s noncompliance.” Durr v. Durr, 912 So.2d 1033, 1040 (¶ 25) (Miss.Ct.App.2005). Thus, “[n]o showing as to the McKee factors is required” where there is a finding of contempt. Patterson v. Patterson, 20 So.3d 65, 73 (¶ 26) (Miss.Ct.App.2009).
¶ 11. Additionally, Mississippi Code Annotated section 93-5-23 (Supp.2012) requires the chancellor to impose attorney’s fees for unsubstantiated allegations of abuse:
If after investigation by the Department of Human Services or final disposition by the youth court or family court allegations of child abuse are found to be without foundation, the chancery court shall order the alleging party to pay all court costs and reasonable attorney’s fees incurred by the defending party in responding to such allegation.
(Emphasis added).
¶ 12. In this case, the chancellor ordered Nicole to pay Michael’s attorney’s fees and the GAL fees as follows:
With regard to [Michael’s] claims for attorney’s fees, the [c]ourt finds that the allegations made by [Nicole] are without foundation and furthermore that she was found in contempt.... As such, all the [GAL] fees are hereby [assessed] to [Nicole]. [Nicole] shall pay the [GAL] her remaining fees in the amount of $1,200.00 along with reimbursing [Michael] the [GAL] fees he initially paid in the amount of $1,500.00 within sixty (60) days of September 26, 2011.
After examining the [McKee factors], the [c]ourt finds that [Michael] is entitled to attorney’s fees in the amount of $8,076.01[,] which the [c]ourt finds were reasonable and necessary in prosecuting the contempt case against [Nicole], and further in defending the unsubstantiated allegations of abuse and/or neglect[,] and a judgment is hereby entered for the same. As such[,] a total judgment is hereby entered against [Nicole] in the amount of $9,733.91 in favor of [Michael], which shall be paid within sixty (60) days of September 26, 2011[,] along with the remaining $1,200.00 in [GAL] fees[,] which shall be paid directly to the [GAL] within sixty (60) days of September 26, 2011[.]
¶ 13. We cannot say that the chancellor abused his discretion in awarding attorney’s fees to Michael for his successful prosecution of the contempt charges against Nicole or for his defense against the baseless allegations of abuse. We also find that the chancellor did not abuse his discretion in ordering Nicole to pay the GAL fees. The chancellor found Nicole in contempt for claiming the children as dependents on her 2008 tax return and for withholding one of the children from Michael on one occasion. The chancellor did not find Michael in contempt for any of the claims asserted by Nicole. Additionally, the chancellor determined that Nicole’s allegations of abuse against Michael were unsubstantiated. The chancellor’s order was clear that the fees were awarded because of the unsubstantiated abuse allegations and because of Nicole’s contemptuous conduct.
*759 ¶ 14. While Michael is certainly entitled to an award of attorney’s fees for the contempt and for his defense against the abuse allegations, it is not clear that the total amount of $8,076.11 is only for the contempt and defense against the abuse allegations. In fact, an exhibit shows that at least part of the fees awarded were for the modification-of-child-custody proceedings. As such, the court erred in awarding the full amount of the attorney’s bill. Although there may be difficulty in allocating the attorney’s fees, the chancellor should nonetheless make that determination. Therefore, the amount of the award of attorney’s fees is reversed and this issue .is remanded to the chancellor for a determination of the amount of attorney’s fees that should be awarded to Michael for the contempt proceedings and defense against the baseless abuse allegations.
¶ 15. Michael also asks this court to order Nicole to pay his attorney’s fees on appeal. “When allowed, this Court has generally granted attorney’s fees in the amount of one-half of what was awarded [by the chancellor].” Carroll v. Carroll, 98 So.3d 476, 483 (¶ 26) (Miss.Ct.App.2012) (citing Lauro v. Lauro, 924 So.2d 584, 592 (¶ 33) (Miss.Ct.App.2006)). However, because Nicole prevails on this issue, Michael is not entitled to attorney’s fees on appeal.

II. Modification of Child Custody

¶ 16. “In a modification action, the party seeking a change in custody bears the initial burden of proving there has been a material change in circumstances adverse to the child’s welfare.” Wilson, 79 So.3d at 561 (¶ 43) (quoting Anderson v. Anderson, 961 So.2d 55, 58 (¶ 6) (Miss.Ct.App.2007)) (internal quotation marks omitted). “In determining whether a material change has occurred, chancellors are instructed to consider the totality of the circumstances.” Id. (citing Mabus v. Mabus, 847 So.2d 815, 818 (¶8) (Miss.2003)).
¶ 17. “If there has been a material change, chancellors must ‘then analyze and apply the Albright factors in light of that change.’ ” Id. (quoting Sturgis v. Sturgis, 792 So.2d 1020, 1025 (¶ 19) (Miss. Ct.App.2001)). The Albright factors are as follows:
(1) the child’s age, health, and sex; (2) which parent had the continuity of care before the separation; (3) which parent has the best parenting skills; (4) which parent has the willingness and capacity to provide primary child care; (5) each parent’s employment and its responsibilities; (6) each parent’s physical and mental health and age; (7) the emotional ties between the child and each parent; (8) each parent’s moral fitness; (9) the child’s home, school, and community record; (10) the child’s preference, if the child is over twelve years old; (11) the stability of the home environment; and (12) any other relevant equitable factor.
Id. at 566 (¶ 64) (citing Daniel v. Daniel, 770 So.2d 562, 564 (¶ 6) (Miss.Ct.App.2000)). “In all cases involving child custody, including modification [cases], the polestar consideration is the best interest and welfare of the child.” Id. at (¶ 63) (quoting D.M. v. D.R., 62 So.3d 920, 923 (¶11) (Miss.2011)). “The Albright factors are a guide for chancellors in weighing the facts to determine the child’s best interest.” Id. However, “[a]n Albright analysis is not, by any means, a mathematical equation.” Id. (citing Lee v. Lee, 798 So.2d 1284, 1288. (¶ 15) (Miss.2001)). Further, “the factors are not meant to be weighed equally in every case.” Id. (citing Divers v. Divers, 856 So.2d 370, 376 (¶ 27) (Miss.Ct.App.2003)). “In some cases, one or two factors may weigh more heavily and control the custody determination.” Id. (citing Divers, 856 So.2d at 376 (¶ 27)). While all *760 factors are important, “the chancellor has the ultimate discretion to weigh the evidence the way he sees fit.” Id. (quoting Johnson v. Gray, 859 So.2d 1006, 1018-14 (¶ 86) (Miss.2003)).
¶ 18. In the case before us, the chancellor found a material change in circumstances as follows:
The evidence shows that the parties have trouble getting along and rarely agree on anything. The [GAL] found that the parties have trouble communicating with one another. One argument between the parties is the length of the children’s hair. It has been noted that the parties have other arguments that relate to the children’s education and health. However, the parties spent a great length of time in court explaining their positions and disagreements as to the “hair” issue. If the parents cannot agree on such a minuscule issue as the length of a child’s hair, the [c]ourt finds it hard to believe that they will ever agree on anything.
[[Image here]]
Since the last order of custody in 2008, there has been a material change in circumstances detrimental to the children’s best interest. The parents have communication problems and can rarely agree on anything. These children are now in school[,] which takes a great deal of cooperation to make the current custody schedule workable. Decisions such as where the children need to go to school are becoming more important. These children need one parent to have the final say on big decisions such as what school they should attend. Lately, the children have become confused at times as to where they will go home that particular day. There is no reason these children should suffer for their parent[s’] lack of communication and unwillingness to get along. For the reasons stated above, the [c]ourt finds that there has been a material change in circumstances[,] which allows for a modification of custody.
¶ 19. After finding a material change in circumstances adverse to the children’s welfare, the chancellor proceeded to conduct an Albright analysis, which Michael now challenges on appeal. The chancellor found that the following factors favored Nicole: (1) age, health, and sex of the children; (2) parenting skills; and (3) willingness and capacity to provide primary child care. The remaining factors were neutral, but Michael only takes issue with the following neutral factors: (1) employment of the parents and responsibilities of that employment; (2) moral fitness of the parent; (3) home, school and community record of the children; and (4) other factors relevant to the parent-child relationship. Below, we will address each factor disputed by Michael.

A. Age, Health, and Sex of the Children

¶ 20. The chancellor found this factor favored Nicole as follows:
The parties have two minor children, both are female, and both were born on October 26, 2004. Neither [child is] of tender years[,] which may tend to show a preference for the mother. The sex of the female children would favor the natural mother. Both children are in relatively good health. The children have had allergy problems and urinary tract infections in the past. Although [Michael] knows the children to have these health issues, he has at least on one occasion allowed the girls to take a bath with a dog and continues to smoke in the presence of the children. Also, the [s]tep-[m]other smokes in the presence of the children while traveling in the car. Accordingly, the [c]ourt finds that this factor favors the mother.
*761 ¶ 21. We note that Nicole also smokes cigarettes, but not in the presence of the children. This Court has held that a parent’s smoking outside the presence of children with allergies does not weigh against that parent under this Albright factor. See Owens v. Owens, 950 So.2d 202, 208 (¶ 18) (Miss.Ct.App.2006) (holding that the “chancellor properly found that this factor does not weigh against [the smoking parent] because the evidence strongly indicates that [he] has made great effort to avoid smoking around [the child]”). Conversely, we have held that a parent’s smoking in the presence of the children weighs against that parent. See Davis v. Stevens, 85 So.3d 943, 950 (¶ 29) (Miss.Ct.App.2012).
¶ 22. As to the age of the children, the twins were six years of age at the time of trial. Of course, the age of a child is “but one factor out of many to be considered in a child custody ease.” Id. at 949 (¶ 28) (quoting Gutierrez v. Bucci, 827 So.2d 27, 31 (¶ 17) (Miss.Ct.App.2002)).
¶ 23. Regarding the sex of the children, Michael argues that this factor should not have favored Nicole because he has a wife, Wendy, and several other female relatives in the area, whereas Nicole only has her mother in the area. Again, these factors are “not, by any means, a mathematical equation.” Wilson, 79 So.3d at 566 (¶ 63). We cannot say that the chancellor erred in finding that this factor favored Nicole.

B. Parenting Skills

¶ 24. The chancellor found that this factor favored Nicole as follows:
[Nicole] claims that [Michael] makes the children wear shoes too small for their feet[,] which shows a lack of parenting skills. Also, the children have had a history of urinary tract infections and allergy problems, but the father has on one occasion allowed the children to take a bath with a dog and continues to smoke in the presence of the children. The evidence shows that [Nicole] is the parent who customarily takes the children to the doctor and is the most involved in the children’s school activities. She has been to the school countless times, and [Michael] can only remember going once. Accordingly, the [c]ourt finds that this factor favors [Nicole],
¶ 25. This Court has held that the parenting-skills factor favors a parent who, among other things, routinely takes the child to the doctor. See Klink v. Brewster, 986 So.2d 1060, 1064 (¶14) (Miss.Ct.App. 2008); Turner v. Turner, 824 So.2d 652, 656 (¶ 13) (Miss.Ct.App.2002). Further, a parent who was more involved in school activities has been favored under the parenting-skills factor. See Tritle v. Tritle, 956 So.2d 369, 375 (¶18) (Miss.Ct.App.2007). We cannot say that the chancellor erred in finding that this factor favored Nicole.

C. Willingness and Capacity to Provide Primary Childcare

¶ 26. The chancellor found that this factor favored Nicole as follows:
Since both parents have had joint physical custody, both parents have provided primary childcare during their time with the children. Although [Michael] has had the children the same amount of time, he has only been to the school [once] to participate in school functions. [Nicole] has been to the school countless times and has been the parent who takes the children to the doctor most of the time. Accordingly, the [c]ourt finds that this factor favors [Nicole].
¶ 27. Michael argues that this factor “reflects only a desire to be the primary custodian” and that the record contains numerous instances reflecting Michael’s desire to be the primary custodian of the children. However, Michael cites no au *762 thority to support his argument regarding this factor. Therefore, his argument is procedurally barred. See Lucas v. Williamson, 852 So.2d 67, 68 (¶ 4) (Miss.Ct.App.2003). Notwithstanding the procedural bar, this Court has never held that this factor only reflects a parent’s desire to have custody. We find that the record supports the chancellor’s resolution of this factor in favor of Nicole because she has been the primary parent to take the children to the doctor and visit their school, which shows her willingness and capacity to provide primary childcare. This issue is without merit.

D.Employment of the Parent and Responsibilities of that Employment

¶ 28. The chancellor found that this factor was neutral as follows:
Both the parties have changed employment since the [d]ivorce [d]ecree. Now, both parties have stable but flexible jobs that would allow them to take care of the children in the case of sickness or emergency. Both parties are fortunate in that their respective employment allows the liberty to be with the children should emergencies arise, and accordingly, the [c]ourt finds that the responsibilities of employment favor neither party-
¶ 29. Michael argues that this factor should have favored him because Nicole was fired from her job. However, at the time of trial, Nicole had obtained new employment. Further, neither party cites any case law pertaining to this factor, and this assignment of error is procedurally barred. Notwithstanding the procedural bar, we cannot say that the chancellor erred in his resolution of this factor.

E.Moral Fitness of the Parents

¶ 30. The chancellor determined that this factor did not favor either party:
Both parties’ moral fitness can be called into question [because] both have lied in regards to their tax returns. [Michael] had been compensated for side jobs where he was paid in cash, and he did not report the income. Also, [Nicole] actively sought the children’s daycare expenses in order to claim them and did claim them on her tax return even though she was not the parent paying the expenses. Accordingly, the [c]ourt finds this factor to favor neither party.
¶ 31. We note that neither party cites a single case to support an argument pertaining to the moral-fitness factor. Thus, this argument is procedurally barred. Procedural bar aside, we have no reason to find that the chancellor abused his discretion in finding that this factor was neutral. This issue is without merit.

F.Home, School, and Community Record of the Children

¶ 32. The chancellor found that this factor favored neither party:
[Michael] has a greater number of relatives in the local area, but the [c]ourt must take note that the mother lives with her mother and has a son, age nine, that resides in the home and has bonded with the two girls born [to] the two parties. The grandmother is a recovering alcoholic and still drinks from time to time. The mother has been late to pick up the children from school totaling 18 times. However, the mother has had the most involvement with the children and their school activities. She has been to the school countless times[,] whereas [Michael] has only been once. Accordingly, the [c]ourt finds that this factor favors neither party.
We cannot say that the chancellor abused his discretion in determining that this factor was neutral.

*763
G. Other Factors

¶ 38. The chancellor noted the following under the “catch-all” factor:
The [c]ourt takes note that [Nicole] made claims of abuse/neglect by [Michael] before the trial and up to the end of trial. [Neither] DHS nor the [GAL] found these claims to have merit. The [c]ourt was not presented with evidence to show that the children had been adversely affected by the allegations of abuse/neglect. The [c]ourt finds that in this particular case[,] the allegations of abuse/neglect have not risen to the level that would allow the [c]ourt to weigh this factor against the mother. Therefore, the [c]ourt finds that this factor favors neither party.
Michael argues that this factor should have weighed in his favor because Nicole made unsubstantiated allegations of abuse. He relies on Jernigan v. Jernigan, 830 So.2d 651, 652 (¶ 3) (Miss.Ct.App.2002), to support his contention. However, Jemigan is distinguishable from this case because the mother in Jemigan made allegations of sexual abuse in at least three different jurisdictions against the father even though there was no testimony or medical evidence to support those allegations. Id. We cannot say that the chancellor erred in finding that this factor was neutral.
¶ 34. In sum, we find that the chancellor properly weighed the Albright factors and modified custody of the twins to Nicole. Therefore, we affirm the grant of sole legal and physical custody to Nicole.

III. Standard-Visitation Award

¶ 35. “Visitation is a matter within the chancellor’s sound discretion.” Brooks v. Brooks, 76 So.3d 215, 222 (¶ 31) (Miss.Ct.App.2011). “The chancellor is charged with fashioning a visitation schedule that is in the best interests of the children, and the chancellor’s visitation decision is afforded great deference by this Court.” Id. Our supreme court has emphasized the importance of a non-custodial parent’s visitation rights:
Certainly the rights and responsibilities of the parent having custody following a divorce are paramount with respect to matters of schooling, discipline^] and the like. We are afraid that by labeling the rights of the non-custodial parent “visitation” we imply an inordinate subordination of those rights in quality. That there will be no misunderstanding in the future[,] the chancellor should approach the fixing of visitation rights with the thought in mind that, absent extraordinary circumstances militating to the contrary, the non-custodial parent will[,] during the periods of visitation[,] have broad authority and discretion with respect to the place and manner of the exercise of same, subject only to the time constrictions found reasonable and placed in the decree. Overnight visitation with the non-custodial parent is the rule, not the exception; indeed, a noncustodial parent is presumptively entitled during reasonable times to overnight visitation with the children. The approach we mandate is based upon the premise of our law in this area: that children of divorced parents should be encouraged to have a close, affectionate and, under the circumstances, as normal as possible a parent-child relationship. To be sure, this ideal is seldom achieved. This, however, is no reason for the law to impose obstacles to that achievement.
Cox v. Moulds, 490 So.2d 866, 870 (Miss.1986) (internal citation omitted).
¶ 36. This Court has held that “liberal visitation, at a minimum, means two weekends a month and five weeks during the summer.” Messer v. Messer, 850 So.2d 161, 167 (¶ 22) (Miss.Ct.App.2003) (citing Chalk v. Lentz, 744 So.2d 789, 792 (¶ 9) (Miss.Ct. *764 App.1999)). Here, Michael was awarded two weekends per month and six weeks in the summer, along with holidays every other year. We cannot say that the chancellor abused his discretion in granting standard visitation to Michael. This issue is without merit.
¶ 37. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR A DETERMINATION OF ATTORNEY’S FEES CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE/CROSS-APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Michael had a daughter from a previous relationship, who was twenty-two years of age at the time of the trial in 2009, and Nicole had a son from a previous relationship, who was nine years of age at the time of the trial.

. These allegations of abuse were later determined to be unsubstantiated.